UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CABOT LODGE SECURITIES, LLC

      Plaintiff,

v.                                Case No.:

IRENE I. KIRDAHY,

      Defendant.

_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, Cabot Lodge Securities, LLC ("Cabot Lodge"), by and through its undersigned counsel, hereby files its complaint for declaratory and injunctive relief against Defendant Irene I. Kirdahy and states:

## INTRODUCTION

1.    Cabot Lodge seeks declaratory and temporary restraints, and preliminary and permanent injunctive relief to preclude Defendant from pursuing an arbitration Defendant has filed before the arbitration tribunals of the Financial Industry Regulatory Authority ("FINRA") styled *Irene I. Kirdahy v. Cabot Lodge Securities, LLC, Jeffrey S. Sanders, and Bryan F. Wiedersum,* and further identified by FINRA Case No. 17-00041 (the "Arbitration"). A copy of the Statement of Claim filed in the Arbitration (the "Statement of Claim") is attached as Exhibit A.

2.    Defendant should be enjoined from proceeding with the Arbitration against Cabot Lodge because there is no arbitration agreement between Defendant and Cabot Lodge and Defendant is not and has never been a customer of Cabot Lodge.

## PARTIES

3.      Cabot Lodge is a securities broker-dealer organized as a Delaware limited liability company with its principal place of business in New York, New York.

4.      Upon information and belief, Defendant Irene I. Kirdahy is a citizen of and resides in Palm Beach County, Florida.

## JURISDICTION AND VENUE

5.      The Court has original subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 because this action arises under the Federal Arbitration Act, 9 U.S.C. § 4.

6.      Jurisdiction is also proper under 28 U.S.C. § 1332 because there is complete diversity with respect to these claims, and the matter in controversy exceeds $75,000, exclusive of interest and costs.

7.      Venue is proper under 13 U.S.C. § 1391 because a substantial part of the events giving rise to this action allegedly occurred within this judicial district.

## FACTUAL BACKGROUND

### The Arbitration

8.      Defendant initiated the Arbitration through FINRA on January 3, 2017.  Cabot Lodge is one of three Respondents named in the Arbitration.  Other Respondents are Jeffrey S. Sanders and Bryan F. Wiedersum.

9.      Defendant asserts various claims against Cabot Lodge relating to the recommendation and sale of several investments and two subsequent FINRA arbitrations relating to those investments.  *See* Exhibit A, p. 3, ¶ 10, p. 4, ¶ 11, pp. 6-7, ¶ 16.

10.    Specifically, Defendant asserts claims of: 1) common law fraud; 2) breach of fiduciary duty; 3) negligence; 4) breach of contract; 5) violation of Florida Statute 825.103; and 6) violation of Florida Statute 517.301. *See id.*, pp. 10-17.

11.    Defendant falsely alleges that she was a customer of Cabot Lodge. *Id.* ¶ 3.

12.    The investments at issue were purchased from 2006-2008, years before Cabot Lodge was established in 2011.

13.    Cabot Lodge denies any involvement with Claimant or the transactions at issue, denies all alleged wrongdoing, and denies that it has any liability for these claims.

14.    No arbitration agreements or other agreements exist between Defendant and Cabot Lodge.  Defendant is not now, nor has she ever been, a customer of Cabot Lodge, and has never done any business of any kind with Cabot Lodge.  Defendant has never had a brokerage account with Cabot Lodge.  Defendant has never entered into any contracts with Cabot Lodge.  Defendant is a complete commercial stranger to Cabot Lodge.

15.    Cabot Lodge, therefore, has no obligation to arbitrate any claims brought by Defendant and there is no basis upon which Defendant can compel Cabot Lodge to arbitrate claims before the arbitration tribunals of FINRA.

16.    Cabot Lodge will be irreparably harmed if it is compelled to arbitrate this dispute when it has not agreed to arbitrate.

17.    Declaratory and injunctive relief is necessary to prevent Cabot Lodge from being compelled to arbitrate claims it did not agree to arbitrate, as this is an issue that affects the parties' legal interests with immediacy.  Defendant has initiated the Arbitration and, unless enjoined, Cabot Lodge will have to answer or otherwise plead in response to Defendant's Statement of Claim, even

though it has not agreed to arbitrate the claim and has not agreed to forego its right to have this dispute heard in a court of competent jurisdiction.

18.    A declaratory judgment that Defendant is not a customer of Cabot Lodge pursuant to FINRA Rule 12200, and thus cannot compel Cabot Lodge to arbitrate her claim, is proper and warranted, as well as a preliminary and permanent injunction enjoining Defendant's Arbitration of her claims against Cabot Lodge.

## COUNT I
## DECLARATORY JUDGMENT

19.    Cabot Lodge repeats and re-alleges the allegations in paragraphs 1 through 18 as if fully set forth herein.

20.    No arbitration agreement exists between Defendant and Cabot Lodge to arbitrate any disputes, including the claims asserted by Defendant in the Arbitration.

21.    Defendant seeks arbitration based on Rule 12200 of the FINRA Code, which provides:

Parties must arbitrate a dispute under the Code if:

- Arbitration under the Code is either:

    (1)    Required by written agreement, or

    (2)    Requested by the *customer*;

- The dispute is between a *customer* and a member or associated person of a member; *and*

- The dispute arises in connection with the business activities of the member or associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

4

*See* FINRA Rule 12200 (emphasis added).[1]

22.     There is no written agreement to arbitrate between Defendant and Cabot Lodge.

23.     To compel arbitration under FINRA Rule 12200, Defendant must show that there is a dispute between a customer and a FINRA member.

24.     Defendant was not a customer of Cabot Lodge.  Cabot Lodge is not obligated to arbitrate any claims brought by Defendant against it, including the claims asserted against Cabot Lodge by Defendant in the Arbitration.

25.     Declaratory relief is appropriate because an actual, present, genuine, and justiciable controversy has arisen between Plaintiff and the Defendant relating to the arbitrability of Defendant's claims in the Arbitration.

26.     Plaintiff Cabot Lodge, therefore, respectfully requests a declaratory judgment from this Court pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 that Cabot Lodge has no obligation to arbitrate Defendant's claims.

## COUNT II
## INJUNCTIVE RELIEF

27.     Cabot Lodge repeats and re-alleges the allegations in paragraphs 1 through 18 as if fully set forth herein.

28.     Cabot Lodge will suffer immediate and irreparable harm if it is compelled to arbitrate claims it did not agree to arbitrate.

29.     Cabot Lodge is likely to prevail on the merits of its claims that it has no obligation to arbitrate the claims asserted by the Defendant in the Arbitration, as there is no arbitration

---

[1] A copy of Rule 12200 of the FINRA Code is attached hereto as Exhibit B.

agreement between Cabot Lodge and Defendant, and the Defendant is not a "customer" of Cabot Lodge under FINRA Rule 12200.

30.     Cabot Lodge has no adequate remedy at law.

31.     Any burden resulting from the imposition of injunctive relief upon Defendant would be negligible in comparison to the potential harm to Cabot Lodge should it be compelled to arbitrate claims it did not agree to arbitrate.

32.     The imposition of injunctive relief is in the public interest because parties who did not agree to arbitrate disputes should not be compelled to do so, and persons who have no customer relationships with securities broker/dealers should not be permitted to force the broker/dealer to arbitrate claims with them.

33.     Cabot Lodge is currently required to file an Answer to Defendant's Statement of Claim on or before March 31, 2017 and Cabot Lodge will be forced to comply with additional procedures and processes thereafter.  Immediate and irreparable harm will result if expedited relief is not granted, and Cabot Lodge has no adequate remedies at law.

34.     For these reasons, Plaintiff Cabot Lodge is entitled to a temporary restraining order, and to preliminary and permanent injunctive relief enjoining Defendant from proceeding with the Arbitration.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Cabot Lodge respectfully requests that the Court:

A.     Enter a declaratory judgment that the Defendant is not a "customer" of Cabot Lodge within the meaning of Rule 12200 of the FINRA Code of Arbitration Procedure for Customer Disputes and has no standing under FINRA rules to compel arbitration of her claims against Cabot Lodge;

6

B.      Enter an Order temporarily restraining, and preliminarily and permanently enjoining the Defendant from further proceedings against Cabot Lodge in the FINRA Arbitration;

C.      Award Plaintiff its costs and expenses incurred herein; and

D.      Award such other and further relief as this Court deems just and proper.

_____

Peter B. King, Esq.  (FBN: 0057800)
pking@wiandlaw.com
ncook@wiandlaw.com
Ailen Cruz (FBN: 105826)
acruz@wiandlaw.com
mmadison@wiandlaw.com
WIAND GUERRA KING P.A.
5505 W. Gray Street
Tampa, Florida 33609
Phone:  (813) 347-5100
Facsimile:  (813) 347-5198

*Attorneys for Cabot Lodge Securities, LLC*

# EXHIBIT A

FINANCIAL INDUSTRY REGULATORY AUTHORITY
**DISPUTE RESOLUTION**

|  |  |  |
|---|---|---|
| **IRENE I. KIRDAHY,** | . | |
| **Claimant,** | . | |
| | . | |
| v. | . | |
| | . | |
| **CABOT LODGE SECURITIES, LLC,** | . | **Arbitration No.:** |
| **JEFFREY S. SANDERS,** | . | |
| **BRYAN F. WIEDERSUM,** | . | |
| **CRAIG M. GOULD, and** | . | |
| **HOWARD DAVIS,** | . | |
| | . | |
| **Respondents.** | . | |

**STATEMENT OF CLAIM**

1.     Claimant Irene I. Kirdahy ("Mrs. Kirdahy" or "Claimant"), by and through her undersigned counsel, Gucciardo Law Group, P.A., hereby files the instant Statement of Claim to commence a FINRA Dispute Resolution arbitration proceeding against Respondents Cabot Lodge Securities, LLC, Jeffrey S. Sanders, Bryan F. Wiedersum, Craig M. Gould, and Howard Davis (collectively, "Respondents").

2.     Respondents' misconduct at issue in the instant proceeding has caused Claimant to sustain damages of approximately $600,000.00.  Accordingly, Claimant hereby respectfully requests that the arbitration panel to be appointed in this matter award Claimant compensatory damages of approximately $600,000.00, punitive damages of three times the amount of compensatory damages awarded (approximately $1,800,000.00), pre-judgment interest, post-judgment interest, costs, and attorney's fees.

NLINDSAY - 27/01/2017 08:58:56

## THE PARTIES

3.     Claimant Irene I. Kirdahy is a resident of Hillsboro Beach, Florida and was at all relevant times a customer of Respondents Cabot Lodge Securities, LLC, Jeffrey S. Sanders, Bryan F. Wiedersum, Craig M. Gould, and Howard Davis.

4.     Respondent Cabot Lodge Securities, LLC ("Cabot Lodge Securities") is a FINRA-member securities broker/dealer (Central Registration Depository "CRD" No. 159712) headquartered at 60 Broad Street, Suite 3402, New York, New York 10004.

5.     Respondent Jeffrey S. Sanders ("Sanders") is a FINRA Registered Representative ("CRD" No. 2200497) who has been employed by Respondent Cabot Lodge Securities since March 2014.  Sanders was previously employed by FINRA-member securities broker/dealer FINTEGRA, LLC from February 2009 through October 2010.

6.     Respondent Bryan F. Wiedersum ("Wiedersum") is a FINRA Registered Representative ("CRD" No. 2489614) who was employed by FINRA-member securities broker-dealer FINTEGRA, LLC from June 2009 through February 2014.  Wiedersum is no longer registered with any FINRA-member.

7.     Respondent Craig M. Gould ("Gould") is a FINRA Registered Representative ("CRD" No. 2367293) who has been the President and Chief Executive Officer (CEO) and a Control Person of Respondent Cabot Lodge Securities since May 2012.  Gould was previously employed by FINRA-member securities broker/dealer FINTEGRA, LLC from February 2009 through October 2010.

8.     Respondent Howard Davis ("Davis") is a FINRA Registered Representative ("CRD" No. 1782118) who has been the Chief Compliance Officer (CCO) and a Control Person of Respondent Cabot Lodge Securities since December 2014.

2

NLINDSAY - 27/01/2017 08:58:56

## JURISDICTION

9. Jurisdiction in this proceeding is established pursuant to a demand for arbitration submitted by a customer (Claimant) of FINRA Registered Representatives (Sanders, Wiedersum, Gould and Davis) and a FINRA-member securities broker/dealer (Cabot Lodge Securities). Claimant has submitted said demand for arbitration in accordance with Rule 12200 of the FINRA Code of Arbitration Procedure for Customer Disputes (the "FINRA Code").

10. The claims asserted herein first concern fraudulent and negligent misconduct perpetrated upon Claimant directly by Respondents Sanders, Wiedersum, Gould and Davis. Said Respondents are directly liable to Clamant for those actions. Additionally, Sanders, Gould and Davis were employed by Respondent Cabot Lodge Securities during the time that certain misconduct alleged herein was perpetrated upon Claimant. Pursuant to the legal doctrine of *respondeat superior*, state statutory liability, Section 20(a) of the Securities Exchange Act of 1934 and FINRA Conduct Rule 3010, Respondent Cabot Lodge Securities is liable to Claimant for Sanders, Gould and Davis' misconduct perpetrated during the time that Cabot Lodge Securities employed them. Furthermore, Respondents Gould and Davis served as "Control Persons" of Cabot Lodge Securities during the time period at issue in the instant proceeding, and pursuant to the legal doctrine of Control Person liability, established by Section 20(a) of the Securities Exchange Act of 1934, Gould and Davis are liable to Claimant as having been Control Persons of Cabot Lodge Securities. Finally, Respondents Cabot Lodge Securities, Gould and Davis failed to properly supervise employee Sanders and themselves, and thus, are also liable to Claimant for those failures to supervise.

NLINDSAY - 27/01/2017 08:58:56

## SUMMARY

11.     This case presents an extremely disturbing set of facts involving outrageous misconduct perpetrated by all Respondents upon Claimant, Mrs. Kirdahy. Said misconduct started with Sanders and Wiedersum having invested and held Claimant's hard-earned retirement savings in wholly unsuitable and fraudulent investments while they were employed by FINRA broker/dealers including FINTEGRA, LLC ("FINTEGRA") and Cabot Lodge Securities. The unsuitable, fraudulent and otherwise inappropriate investments in which Sanders and Wiedersum invested Claimant's retirement money include, but are not limited to, NNN Collateralized Senior Notes, the Analytical Based Decisions Energy and Weather Fund (ABD E&W Fund), Uriah Bement Coal, Inc. ("Uriah Coal"), KBS Real Estate Investment Trust, Inc., an Allianz MDEX 5 variable annuity, a Great American VALOR II variable annuity, and the ADR Loan Fund.

12.     As evidenced by the FINRA CRD Reports attached hereto as Exhibits "A," "B," and "C," respectively, Respondents Gould, Sanders and Wiedersum were all employed with FINTEGRA during overlapping time periods. Gould was intimately familiar with how Sanders and Wiedersum had invested the money of Claimant Kirdahy and numerous other customers. When problems with the unsuitable and fraudulent investments were coming to a head, Respondent Gould "saw the writing on the wall," terminated his employment with FINTEGRA, and opened Cabot Lodge Securities as President and Chief Executive Officer (CEO). Specifically, Respondent Gould terminated his employment with FINTEGRA in December 2010 (See Gould CRD Report, Exhibit "A"), Cabot Lodge Securities was formed as a Delaware corporation on October 21, 2011 (See Cabot Lodge Securities CRD report attached hereto as Exhibit "D") and Gould became President and CEO in May, 2012 (See Gould CRD Report, Exhibit "A").

4

NLINDSAY - 27/01/2017 08:58:56

13.     In early 2012, while Sanders and Wiedersum were employed by FINTEGRA, they engaged in fraudulent conduct to ensure that they and their then-current employer, FINTEGRA, would not be sued by their customers, whom they put into the unsuitable, fraudulent and otherwise improper investments. Indeed, as revealed by the draft Statement of Claim attached hereto as Exhibit "E," the attorney ultimately retained commenced a FINRA Dispute Resolution arbitration proceeding on behalf of customers of Sanders and Wiedersum to seek recovery of losses they sustained in the Uriah Coal investment, and not in losses sustained in any of the other investments. Furthermore, said Statement of Claim not only failed to name Sanders, Wiedersum and FINTEGRA as respondents, it named only OTHER broker/dealer employers of Sanders and Wiedersum and the control persons of those firms. Furthermore, unbelievably, the draft Statement of Claim reveals that SANDERS AND WIEDERSUM THEMSELVES ASSERTED CLAIMS AS CLAIMANTS!

14.     Needless to say, the above facts reveal seriously egregious misconduct considering not only the clear conflicts of interest presented, but as importantly, that Sanders, Wiedersum and FINTEGRA and its control persons maintained professional liability insurance policies that apparently insured the claims that Claimant and the other customers could have asserted against them (See Exhibit "F," copy of Certificate of Liability Insurance Policy issued by Gotham Insurance Company for Wiedersum). At the Final Hearing in the instant matter, Claimant will present evidence establishing that she recovered NOTHING in connection with the claims she asserted in the above-referenced FINRA proceeding in which Sanders, Wiedersum, FINTEGRA and its control persons were not named as respondents. As detailed below, unfortunately for Claimant Kirdahy and the other customers, that was not then end of Sanders and Wiedersum's fraud.

5

NLINDSAY - 27/01/2017 08:58:56

15.     All of the investments that Sanders and Wiedersum improperly invested Claimant (and other customers) in were unsuitable and/or fraudulent. In or about the end of 2013 and early 2014, things were deteriorating at FINTEGRA financially, and Sanders and Wiedersum were in contact with Respondent Gould, who in the interim had opened and been running Cabot Lodge Securities.     Specifically, Sanders and Wiedersum discussed with Gould leaving FINTEGRA and coming to work with Gould at Cabot Lodge Securities. They also discussed with Gould the fact that their customers who had commenced the above-referenced FINRA arbitration proceeding (which failed to name FINTEGRA, Sanders and Wiedersum) did not recover any significant money, and that said customers now needed to sue FINTEGRA and its control persons in connection with the ABD E&W Fund, LLP. Sanders and Wiedersum also explained to Gould that they had convinced their own attorney 1) to represent the customers, 2) to again not name Sanders and Wiedersum as respondents, and 3) to allow Sanders and Wiedersum to again assert claims therein as claimants, and 4) to assert claims concerning only the ABD E&W Fund, LLP.

16.     In connection with the above-referenced attorney representation, Claimant Kirdahy signed an attorney-client engagement agreement dated March 10, 2014, a copy of which is attached hereto as Exhibit "G." Said Agreement memorializes the engagement of attorney Todd A. Zuckerbrod as attorney for Claimant Kirdahy. As of March 2014, Mr. Zuckerbrod not only previously represented and continued to represent Sanders and Wiedersum; he also previously represented Empire Financial Group, Inc. and Jesup & Lamont Securities Corp. which, as discussed above, previously employed Sanders and Wiedersum. Despite all of the above facts, which clearly presented numerous conflict and other issues concerning Sanders and Wiedersum, Respondents Cabot Lodge Securities and Gould apparently turned a blind eye to

6

NLINDSAY - 27/01/2017 08:58:56

same and hired Sanders as a Registered Representative (See Sanders' CRD Report - Exhibit "B").

17.      As evidenced by the FINRA Arbitration Award attached hereto as Exhibit "H," all of the claims the Sanders/Wiedersum customers asserted in the second FINRA arbitration proceeding orchestrated by Sanders and Wiedersum were dismissed, and thus, none of the customers recovered a dime.  Both FINRA arbitration proceedings intentionally failed to name proper parties and assert necessary claims concerning other investments the customers were placed in by Sanders and Wiedersum.

**Respondents Cabot Lodge Securities, Gould and Davis**
**Are Liable For Failing To Properly Supervise Employee Sanders**

18.      Respondents Cabot Lodge Securities and Gould are directly liable to Claimant for failing to advise her of the misconduct that Sanders and Wiedersum had been and were continuing to perpetrate upon her and their other customers.  Additionally, Respondents Cabot Lodge Securities, Gould and Davis also failed to properly supervise employee Sanders. Specifically, SEC Staff Bulletin No. 17 - Remote Office Supervision, 2004 WL 3711970 (March 22, 2004), requires the following:

> **Closely monitor outside business activities and selling away**.
>
> *A firm should have adequate procedures for reviewing, analyzing, or following up on the information representatives provide concerning outside activities.* In addition, a firm should be alert to and investigate "red flags" indicating possible undisclosed outside business activities and assess all outside business activities by a representative, whether or not related to the securities business. The Commission has recognized that there is a risk that representatives will use outside business activities to carry out or conceal securities law violations. A representative appearing to live more lavishly than his business income would allow might be a "red flag" indicating pursuit of improper or outside business activities. Additionally, we suggest that firms be wary of a

7

NLINDSAY - 27/01/2017 08:58:56

representative who owns a company with a name similar to the name of the firm. A customer could make a check payable to the firm that could be altered by a representative and deposited into a bank account in the name of the company he owns. (Italics added)

19.     Respondent Cabot Lodge Securities failed to have "adequate procedures" in place that would ensure proper supervision of the activities of employee Sanders.  What is outrageous is that Cabot Lodge Securities and Gould were fully aware of Sanders' conduct, yet did NOTHING about it.  The SEC's warnings are clear: firms such as Cabot Lodge Securities that hire registered representatives like Sanders require *extra* supervision such as increased inspections; carefully reviewing the representatives' Forms U-4 and U-5 prior to hiring; closely monitoring representatives' activities to prevent improper outside business activities, and maintaining copies of outgoing and incoming correspondence.

**Respondents Gould and Davis Are *Automatically* Liable as "Control Persons" of Cabot Lodge Securities**

20.     Aside from the fact that Claimant was a customer of Cabot Lodge Securities because she was a customer of Respondent Sanders, Section 20(a) of the Securities Exchange Act imputes liability to Respondents Gould and Davis for the acts of Sanders because they were acting as "controlling persons" with respect to the activities of the registered representatives and other agents of Cabot Lodge Securities.  See *Holinger v. Titan Capital Corp.*, 914 F.2d 1564, 1574 (9th Cir. 1990), *quoted in Rivera v. Clark Melvin Securities Corp.*, Fed.Sec.L.Rep. ¶90,524 (D.P.R. 1999).

21.     Section 20(a) of the Securities Exchange Act states: "Every person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to whom such controlled person is liable, unless the controlling person

8

NLINDSAY - 27/01/2017 08:58:56

acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." (Emphasis added). Mere "control" is needed to be shown to establish a prima facie case. *In re Quintel Entertainment Inc. Securities Litigation*, Fed.Sec.L.Rep. ¶90,700 (S.D.N.Y. 1999), *citing Healey v. Chelsea Resources Ltd*., 736 F. Supp. 488, 495 (S.D.N.Y. 1990); *Food and Allied Service Trades Dept. AFL-CIO v. Millfield Trading Co*., 841 F. Supp. 1386 (S.D.N.Y. 1994).

22.    In order to prove that a control person is liable for the conduct of employees of an entity, the Eleventh Circuit issued the following rule in *Brown v. Enstar Group, Inc.,* 84 F.3d 393 (11th Cir. 1996):

> The district court devised a test that is a combination of the requirements outlined in *Pharo* and *Thompson.* We find the reasoning of the district court persuasive, and so adopt the test set forth in its dispositive order. ***In this circuit, a defendant is liable as a controlling person under section 20(a) if he or she "<u>had the power to control</u> the general affairs of the entity primarily liable at the time the entity violated the securities laws . . . [and] had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability.***
> (Emphasis added)

23.    The *Brown* ruling establishes a bright line rule to be used by this panel in deciding liability here. If Gould and Davis had the "power" to control the general affairs and policies of Cabot Lodge Securities, they are liable for the conduct that violated the securities laws as "control persons." Therefore, Gould and Davis were "control persons" as defined by the *Brown* ruling, i.e., each "had the power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws . . . [and] had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability." As a result, they are liable for the conduct of others, including Gould and Davis, as well as their own acts or omissions.

9

NLINDSAY - 27/01/2017 08:58:56

24.     Respondents' blatant disregard for the laws and rules that govern the securities industry, and Cabot Lodge Securities, Gould and Davis' failure to properly supervise Sanders and detect his fraudulent and otherwise improper conduct, caused the damages Claimant has sustained.     Accordingly, Claimant respectfully requests that the Panel issue an award of compensatory damages of approximately $600,000.00.  Additionally, Claimant also requests that the panel award punitive damages in the amount of $1,800,000.00, plus pre-judgment interest, post-judgment interest, and all costs and fees incurred in connection with the instant FINRA proceeding, including attorney's fees.

25.     Respondents' misconduct warrants a finding of liability against Respondents for the following legal claims:

## CLAIM ONE:
## COMMON LAW FRAUD

26.     Claimant repeats, realleges and adopts paragraphs 1 through 25 above as if fully set forth herein.

27.     Respondents engaged in misconduct intentionally, willfully, maliciously, and with the specific intent to defraud Claimant, or alternatively, with gross and wanton disregard for the rights and interests of Claimants, after having first gained Claimants' reliance and trust.

28.     Respondents defrauded Claimants by, *inter alia*, engaging in the fraudulent misconduct alleged herein, purchasing grossly unsuitable and/or fraudulent investments for Claimant, making misrepresentations and/or omissions to Claimant, failing to properly supervise Respondent Sanders, failing to properly supervise the handling of Claimant, failing to take action to safeguard Claimant and her assets, violating fiduciary duties, violating the policies and procedures of FINTEGRA and Cabot Lodge Securities, violating securities industry rules and

NLINDSAY - 27/01/2017 08:58:56

regulations, violating federal and state laws, and failing to disclose the unlawful nature of Respondents' conduct.

### CLAIM TWO:
### BREACH OF FIDUCIARY DUTY

29.     Claimant repeats, realleges and adopts paragraphs 1 through 28 above as if fully set forth herein.

30.     Respondents owed Claimant a fiduciary duty to act in good faith, to engage with Claimant fairly, not to mislead Claimant, and to abstain from self-dealing.

31.     Respondents breached the fiduciary duties owed to Claimant by, *inter alia*, engaging in the fraudulent misconduct alleged herein, purchasing grossly unsuitable and/or fraudulent investments for Claimant, making misrepresentations and/or omissions to Claimant, failing to properly supervise Respondent Sanders, failing to properly supervise the handling of Claimant, failing to take action to safeguard Claimant and her assets, violating fiduciary duties, violating the policies and procedures of FINTEGRA and Cabot Lodge Securities, violating securities industry rules and regulations, violating federal and state laws, and failing to disclose the unlawful nature of Respondents' conduct.

32.     As a direct and proximate result of Respondents' breaches of fiduciary duty owed to Claimant, Claimant requests that the panel issue an award against Respondents, jointly and severally, in a compensatory damage amount of approximately $600,000.00, plus pre-judgment interest, post-judgment interest, and all costs incurred by Claimant in connection with the instant proceeding, including attorney's fees.

11

NLINDSAY - 27/01/2017 08:58:56

## CLAIM THREE:
## NEGLIGENCE

33.     Claimant repeats, realleges and adopts paragraphs 1 through 32 above as if fully set forth herein.

34.     Respondents were duty bound to use reasonable care in their dealings with Claimant, including the duties to:

> a.   observe high standards of commercial honor and just and equitable principles of trade under FINRA Rule 2010;
>
> b.   make only suitable recommendations under FINRA Rule 2111; and
>
> c.   to supervise Sanders and his handling of Claimant under FINRA Rule 3110.

35.     Respondents were negligent by, *inter alia,* engaging in the fraudulent misconduct alleged herein, purchasing grossly unsuitable and/or fraudulent investments for Claimant, making misrepresentations and/or omissions to Claimant, failing to properly supervise Respondent Sanders, failing to properly supervise the handling of Claimant, failing to take action to safeguard Claimant and her assets, violating fiduciary duties, violating the policies and procedures of FINTEGRA and Cabot Lodge Securities, violating securities industry rules and regulations, violating federal and state laws, and failing to disclose the unlawful nature of Respondents' conduct.

36.     Respondent's negligence was the cause in fact and proximate cause of Claimant's damages.  As a result of the negligence by Respondents, an award should be issued against Respondents in a compensatory damage amount of approximately $600,000.00, plus pre-judgment interest, costs and attorney's fees.

NLINDSAY - 27/01/2017 08:58:56

## CLAIM FOUR:
## BREACH OF CONTRACT

37.     Claimant repeats, realleges and adopts paragraphs 1 through 36 above as if fully set forth herein.

38.     Respondents entered into and/or were subject to express and/or implied contracts with Claimant, and other agreements to which Claimant is a third-party beneficiary (such as FINRA membership agreements).  Pursuant to said contracts/agreements, Respondents agreed to handle Claimant in accordance with fiduciary obligations and securities industry rules and regulations, in accordance with the policies and procedures of FINTEGRA and/or Cabot Lodge Securities and/or the other brokerage firms that employed Sanders and/or Wiedersum, to act in good faith and in the Claimant's best interests, and in compliance with federal laws, state laws, FINRA Conduct Rules for the benefit of Claimant.

39.     Respondents breached those contracts/agreements by, *inter alia*, engaging in the fraudulent misconduct alleged herein, purchasing grossly unsuitable and/or fraudulent investments for Claimant, making misrepresentations and/or omissions to Claimant, failing to properly supervise Respondent Sanders, failing to properly supervise the handling of Claimant, failing to take action to safeguard Claimant and her assets, violating fiduciary duties, violating the policies and procedures of FINTEGRA and Cabot Lodge Securities, violating securities industry rules and regulations, violating federal and state laws, and failing to disclose the unlawful nature of Respondents' conduct having engaged in the conduct set forth herein.

13

NLINDSAY - 27/01/2017 08:58:56

### CLAIM FIVE:
### VIOLATION OF FLORIDA STATUTE 825.103
### EXPLOITATION OF AN ELDERLY PERSON

40.     Claimant repeats, realleges and adopts paragraphs 1 through 39 above as if fully set forth herein.

41.     Fl. Stat. §825.1 03(1)(a) states, " 'Exploitation of an elderly person or disabled adult' means: knowingly, by deception ... obtaining or using, or endeavoring to obtain or use, an elderly person's ... funds, assets, or property with the intent to temporarily or permanently deprive the elderly person ... of the use, benefit, or possession of the funds, assets, or property, or to benefit someone other than the elderly person ... by a person who: 1. Stands in a position of trust and confidence with the elderly person or disabled adult; or 2. Has a business relationship with the elderly person ... ."

42.     Respondents engaged in conduct set forth herein to benefit someone other than Claimant (to wit: Respondents).  Respondents stood in a position of trust and confidence with Claimant and maintained a business relationship with Claimant.

43.     Claimant was over the age of 60 during the time period at issue, and thus, Claimant is classified as "elderly."

44.     Respondents knowingly deceived Claimant by having engaged in the misconduct set forth herein, having knowingly placed Claimant in grossly unsuitable investments, having made false and misleading statements and/or by omitting material information necessary to make the statements made not misleading.  Respondents made misrepresentations and omissions of material facts with the intent to temporarily or permanently deprive Claimant of the use, benefit, or possession of the funds or with wanton disregard for the interests and/or welfare of Claimant.

14

NLINDSAY - 27/01/2017 08:58:56

45.    FL. Stat. §772.11 (1) (Civil remedy for theft or exploitation) states that, "Any person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of ... §825.l03(1) has a cause of action for threefold the actual damages sustained and, in any such action ... and reasonable attorney's fees and court costs in the trial and appellate courts." Respondents' misconduct constitutes violations of §825.103(1) and Claimant is therefore entitled to recover her actual damages threefold, plus attorney's fees. Consequently, Claimant requests that the Panel specifically find that Respondents violated §825.103(1) and award Claimant damages and attorney's fees thereunder.

46.    Respondents Cabot Lodge Securities is liable for the actions of its employees, including Respondent Sanders, pursuant to the legal theory of *respondeat superior*.

### CLAIM SIX:
### VIOLATION OF FLORIDA STATUTE § 517.301

47.    Florida Statutes Chapter 517 is designed to protect the citizens of Florida by requiring registration of persons who want to do business with Florida residents. Registrants must comply with other provisions of Chapter 517, including Section 517.301, which is virtually identical to the SEC.'s Rule 10b-5, which prohibits, "**in connection with the rendering of investment advice, or in connection with the purchase or sale of a security, any person**"

1.    To employ any device, scheme or artifice to defraud;

2.    To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; **or**

3.    To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person." (Emphasis added).

15

NLINDSAY - 27/01/2017 08:58:56

48.     Of pivotal importance in reading the language of Section 517.301 is that liability

is conferred for acts "in connection with the rendering of **investment advice** "**OR**" the purchase

or sale of a security.  It is the use of the disjunctive that differentiates it from Rule 10b-5,

exposing the advisor to scrutiny in every situation where he renders investment advice to his

client.  This crucial distinction, with the disjunctive language "*in connection with investment*

*advice*", is the critical difference between Section 517.301 and Rule 10b-5, a distinction

underscored in the recent Florida case of *Ward v. Atlantic Security Bank,* 777 So.2d 1144 (3rd

DCA 2001).

> "Unlike its federal counterpart, **a securities fraud claim under
> section 517.301 may also be brought for fraud 'in connection
> with the rendering of any investment advice.'**"
>
> *Ward v. Atlantic Security Bank,* 777 So.2d 1144 (Fla. 3rd DCA
> 2001). at 1147 (citations omitted) (Emphasis added).

49.     In turn, Chapter 517 of the Florida Statutes provides that it is unlawful, in

connection with investment advice or the offer, sale, or purchase of a security to, *inter alia,*

employ any device or scheme to defraud, to obtain money by means of an untrue statement of a

material fact or an omission of a material fact, or to engage in any course of business which

would operate as a fraud or deceit.  Unsuitability is an example of such a fraud. See *Newsom v.*

*Dean Witter Reynolds*, 558 So.2d 1076 (1st DCA 1990), *reh. den.*, holding that "unsuitability" is

also a "statutory fraud" under Florida law, Chapter 517.

50.     **Only "mere negligence" need only be shown to establish liability under**

**Section 517.301.**  As the Eleventh Circuit has observed:

> "The Florida statutory requirements [517.301] are identical to Rule 10b-5, *Alna*
> *Capital Associates v. Wagner*, 758 F.2d 562, 565 (11th Cir. 1985), except that **the**
> **scienter requirement under Florida law is satisfied by a showing of mere**
> **negligence** ...." (emphasis added).
> *Gochnauer v. A.G. Edwards & Sons*, 810 F.2d 1042 (11th Cir. 1987).

16

NLINDSAY - 27/01/2017 08:58:56

51.    To the extent that the panel adjudges Sanders to have violated the antifraud provisions of Florida's Chapter 517, common law fraud, common law breach of fiduciary duty, or other grounds, his employer, Sanders, is liable <u>automatically</u> (regardless of Negligence) based on Florida's Administrative Code and the doctrine of *respondeat superior.*

52.    Respondent Cabot Lodge Securities is automatically liable for Sanders' misconduct under Florida Administrative Code 3E-600.002(2), promulgated by the Florida Department of Banking and Finance under Chapter 517, which states, in pertinent part: "A dealer or investment adviser shall be responsible for the acts, practices and conduct of its registered associated persons in connection with the purchase or sale of securities or in connection with the rendering of investment advice...." [1]

53.    *Respondeat superior* liability automatically attaches to Respondent Cabot Lodge Securities for violations by Sanders of Florida's securities fraud statute at Section 517.301, and Florida common law fraud and breach of fiduciary duty.  Without the need to prove any negligence by an employer, such employer is automatically liable for acts of an employee under *respondeat superior* if the employee was acting within the scope of his employment.  As the Florida Supreme Court has decided:

> "A principal is liable for the tortuous conduct of his agent, even though not authorized, if the agent was acting within the scope of his employment or his apparent authority."

> *Life Insurance Co. v. Del Aguila*, 417 So.2d 651, 652 (Fla. 1982).

---

[1] Chapter 3E-600.002(2) of the Florida Administrative Code Rules provides, in its entirety, as follows:

> (2)    A dealer or investment adviser shall be responsible for the acts, practices, and conduct of their registered associated persons in connection with the purchase and sale of securities or in connection with the rendering of investment advice until such time as they have been properly terminated as provided in Rule 3E-600.008, F.A.C.

NLINDSAY - 27/01/2017 08:58:56

Accord, *Cavic v. Grand Bahama Development Company*, 701 F.2d 879 (11th Cir. 1983).

Specifically, under the Florida Securities and Investor Protection Act, Section 517.301,

corporations and similar entities are liable for violations by their employees. *Arthur Young & Co.*

*v. Mariner Corp.*, 630 So.2d 1199 (Fla. 4th DCA 1994).

      **WHEREFORE**, Claimant seeks the following relief from Respondents, jointly and

severally:

    a.      Compensatory damages of approximately **$600,000.00**;

    b.      Punitive damages of approximately **$1,800,000.00**;

    b.      Pre-award and post-award interest, at the legal rate, for Claimant's loss of use of her capital;

    d.      All costs and fees incurred in this action including all forum fees, expert witness-related fees, and additional costs/fees incurred, including attorney's fees;

    e.      Such further relief as the Arbitrators deem just and appropriate.

Dated:      January 3, 2017
              Lakewood Ranch, Florida

                        Respectfully submitted,

                        _____

                        Bradford M. Gucciardo, Esq.
                        Gucciardo Law Group, P.A.
                        8470 Enterprise Circle, Suite 101
                        Lakewood Ranch, Florida 34202
                        Tel.:  941.361.1574
                        Facs.: 941.952.9612
                        bgucciardo@guccilawfl.com
                        Attorneys for Claimant
                        Mrs. Irene I. Kirdahy

NLINDSAY - 27/01/2017 08:58:56

EXHIBIT "A"

NLINDSAY - 27/01/2017 08:58:56



**BrokerCheck Report**

# CRAIG MICHAEL GOULD

CRD# 2367293

| Section Title | Page(s) |
|---|---|
| Report Summary | 1 |
| Broker Qualifications | 2 - 4 |
| Registration and Employment History | 5 - 6 |
| Disclosure Events | 7 |

NLINDSAY - 27/01/2017 08:58:56



Finra

## About BrokerCheck®

BrokerCheck offers information on all current, and many former, registered securities brokers, and all current and former registered securities firms. FINRA strongly encourages investors to use BrokerCheck to check the background of securities brokers and brokerage firms before deciding to conduct, or continue to conduct, business with them.

- **What is included in a BrokerCheck report?**
- BrokerCheck reports for individual brokers include information such as employment history, professional qualifications, disciplinary actions, criminal convictions, civil judgments and arbitration awards. BrokerCheck reports for brokerage firms include information on a firm's profile, history, and operations, as well as many of the same disclosure events mentioned above.
- Please note that the information contained in a BrokerCheck report may include pending actions or allegations that may be contested, unresolved or unproven. In the end, these actions or allegations may be resolved in favor of the broker or brokerage firm, or concluded through a negotiated settlement with no admission or finding of wrongdoing.
- **Where did this information come from?**
- The information contained in BrokerCheck comes from FINRA's Central Registration Depository, or CRD® and is a combination of:
  - o information FINRA and/or the Securities and Exchange Commission (SEC) require brokers and brokerage firms to submit as part of the registration and licensing process, and
  - o Information that regulators report regarding disciplinary actions or allegations against firms or brokers.
- **How current is this information?**
- Generally, active brokerage firms and brokers are required to update their professional and disciplinary information in CRD within 30 days. Under most circumstances, information reported by brokerage firms, brokers and regulators is available in BrokerCheck the next business day.
- **What if I want to check the background of an investment adviser firm or investment adviser representative?**
- To check the background of an investment adviser firm or representative, you can search for the firm or individual in BrokerCheck. If your search is successful, click on the link provided to view the available licensing and registration information in the SEC's Investment Adviser Public Disclosure (IAPD) website at http://www.adviserinfo.sec.gov. In the alternative, you may search the IAPD website directly or contact your state securities regulator at http://www.finra.org/Investors/ToolsCalculators/BrokerCheck/P455414.
- **Are there other resources I can use to check the background of investment professionals?**
- FINRA recommends that you learn as much as possible about an investment professional before deciding to work with them. Your state securities regulator can help you research brokers and investment adviser representatives doing business in your state.

Thank you for using FINRA BrokerCheck.



Using this site/information means that you accept the FINRA BrokerCheck Terms and Conditions. A complete list of Terms and Conditions can be found at brokercheck.finra.org



For additional information about the contents of this report, please refer to the User Guidance or www.finra.org/brokercheck. It provides a glossary of terms and a list of frequently asked questions, as well as additional resources. For more information about FINRA, visit www.finra.org.

www.finra.org/brokercheck

User Guidance

finra

# CRAIG M. GOULD

CRD# 2367293

Currently employed by and registered with the following Firm(s):

**CABOT LODGE SECURITIES LLC**
60 BROAD STREET
SUITE 3402
NEW YORK, NY 10004
CRD# 159712
Registered with this firm since: 08/09/2012

## Report Summary for this Broker

This report summary provides an overview of the broker's professional background and conduct. Additional information can be found in the detailed report.

### Broker Qualifications

This broker is registered with:

• 1 Self-Regulatory Organization
• 13 U.S. states and territories

This broker has passed:

• 1 Principal/Supervisory Exam
• 1 General Industry/Product Exam
• 2 State Securities Law Exams

### Registration History

This broker was previously registered with the following securities firm(s):

**FINTEGRA, LLC**
CRD# 16741
MINNEAPOLIS, MN
04/2009 - 10/2010

**FINTEGRA, LLC**
CRD# 16741
MINNEAPOLIS, MN
02/2009 - 03/2009

**WUNDERLICH SECURITIES, INC.**
CRD# 2543
CHICAGO, IL
03/2004 - 01/2009

### Disclosure Events

All individuals registered to sell securities or provide investment advice are required to disclose customer complaints and arbitrations, regulatory actions, employment terminations, bankruptcy filings, and criminal or civil judicial proceedings.

Are there events disclosed about this broker?  Yes

The following types of disclosures have been reported:

| Type | Count |
|------|-------|
| Regulatory Event | 1 |
| Customer Dispute | 1 |
| Financial | 1 |

### Investment Adviser Representative Information

The information below represents the individual's record as a broker. For details on this individual's record as an investment adviser representative, visit the SEC's Investment Adviser Public Disclosure website at

https://www.adviserinfo.sec.gov

NLINDSAY - 27/01/2017 08:58:56
©2016 FINRA. All rights reserved. Report about CRAIG M. GOULD.

www.finra.org/brokercheck


Finra

User Guidance

# Broker Qualifications

## Registrations

This section provides the self-regulatory organizations (SROs) and U.S. states/territories the broker is currently registered and licensed with, the category of each license, and the date on which it became effective. This section also provides, for every brokerage firm with which the broker is currently employed, the address of each branch where the broker works.

**This individual is currently registered with 1 SRO and is licensed in 13 U.S. states and territories through his or her employer.**

## Employment 1 of 1

| Firm Name: | CABOT LODGE SECURITIES LLC |
| Main Office Address: | 60 BROAD STREET |
| | SUITE 3402 |
| | NEW YORK, NY 10004 |
| Firm CRD#: | 159712 |

| SRO | Category | Date | Status | Date |
|-----|----------|------|--------|------|
| FINRA | General Securities Principal | | APPROVED | 08/09/2012 |
| FINRA | General Securities Representative | | APPROVED | 08/09/2012 |
| FINRA | Investment Banking Representative | | APPROVED | 08/09/2012 |
| FINRA | Operations Professional | | APPROVED | 11/25/2015 |

| U.S. State/ Territory | Category | Status | Date | U.S. State/ Territory | Category | Status | Date |
|-----------------------|----------|--------|------|------------------------|----------|--------|------|
| California | Agent | APPROVED | 11/30/2016 | New York | Agent | APPROVED | 09/05/2012 |
| Connecticut | Agent | APPROVED | 08/29/2012 | Texas | Agent | APPROVED | 02/26/2015 |
| District of Columbia | Agent | APPROVED | 12/02/2016 | West Virginia | Agent | APPROVED | 06/18/2014 |
| Florida | Agent | APPROVED | 11/19/2012 | Wisconsin | Agent | APPROVED | 06/18/2014 |
| Illinois | Agent | APPROVED | 08/31/2012 | | | | |
| Maine | Agent | APPROVED | 12/01/2016 | | | | |
| Minnesota | Agent | APPROVED | 05/07/2015 | | | | |
| Montana | Agent | APPROVED | 03/06/2013 | | | | |
| New Jersey | Agent | APPROVED | 09/04/2012 | | | | |

©2016 FINRA. All rights reserved. Report about CRAIG M. GOULD.

NLINDSAY - 27/01/2017 08:58:56

www.finra.org/brokercheck

FINRA

User Guidance

# Broker Qualifications

## Employment 1 of 1, continued

## Branch Office Locations

This individual does not have any registered Branch Office where the individual is located.

©2016 FINRA. All rights reserved. Report about CRAIG M. GOULD.

NLINDSAY - 27/01/2017 08:58:56

3

www.finra.org/brokercheck

## Broker Qualifications

### Industry Exams this Broker has Passed

This section includes all securities industry exams that the broker has passed. Under limited circumstances, a broker may attain a registration after receiving an exam waiver based on exams the broker has passed and/or qualifying work experience. Any exam waivers that the broker has received are not included below.

This individual has passed 1 principal/supervisory exam, 1 general industry/product exam, and 2 state securities law exams.

#### Principal/Supervisory Exams

| Exam | Category | Date |
| --- | --- | --- |
| General Securities Principal Examination | Series 24 | 07/12/2001 |

#### General Industry/Product Exams

| Exam | Category | Date |
| --- | --- | --- |
| General Securities Representative Examination | Series 7 | 08/10/1993 |

#### State Securities Law Exams

| Exam | Category | Date |
| --- | --- | --- |
| Uniform Securities Agent State Law Examination | Series 63 | 09/02/1993 |
| Uniform Investment Adviser Law Examination | Series 65 | 07/07/1994 |

Additional information about the above exams or other exams FINRA administers to brokers and other securities professionals can be found at www.finra.org/brokerqualifications/registeredrep/.

©2016 FINRA. All rights reserved. Report about CRAIG M. GOULD.

User Guidance

FINRA



User Guidance

FINRA

www.finra.org/brokercheck

# Registration and Employment History

## Registration History

The broker previously was registered with the following firms:

| Registration Dates | Firm Name | CRD# | Branch Location |
|---|---|---|---|
| 04/2009 - 10/2010 | FINTEGRA, LLC | 16741 | MINNEAPOLIS, MN |
| 02/2009 - 03/2009 | FINTEGRA, LLC | 16741 | MINNEAPOLIS, MN |
| 03/2004 - 01/2009 | WUNDERLICH SECURITIES, INC. | 2543 | CHICAGO, IL |
| 05/1995 - 04/2002 | NATIONAL SECURITIES CORPORATION | 7569 | SEATTLE, WA |
| 08/2001 - 11/2001 | WESTAMERICA INVESTMENT GROUP | 6626 | SCOTTSDALE, AZ |
| 08/1993 - 08/1994 | MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED | 7691 | NEW YORK, NY |

## Employment History

This section provides up to 10 years of an individual broker's employment history as reported by the individual broker on the most recently filed Form U4.

Please note that the broker is required to provide this information only while registered with FINRA or a national securities exchange and the information is not updated via Form U4 after the broker ceases to be registered. Therefore, an employment end date of "Present" may not reflect the broker's current employment status.

| Employment Dates | Employer Name | Employer Location |
|---|---|---|
| 05/2012 - Present | CABOT LODGE SECURITIES LLC | NEW YORK, NY |
| 08/2010 - 01/2013 | FINTEGRA OPPORTUNITY FUND MANAGEMENT, LLC | CHICAGO, IL |
| 04/2009 - 10/2010 | FINTEGRA, LLC | MINNEAPOLIS, MN |
| 01/2009 - 01/2010 | COMPASS FINANCIAL HOLDINGS | VALPARAISO, IN |
| 01/2009 - 03/2009 | FINTEGRA, LLC | MINNEAPOLIS, MN |
| 03/2004 - 01/2009 | WUNDERLICH SECURITIES, INC | CHICAGO, IL |

## Other Business Activities

This section includes information, if any, as provided by the broker regarding other business activities the broker is currently engaged in either as a proprietor, partner, officer, director, employee, trustee, agent or otherwise. This section does not include non-investment related activity that is exclusively charitable, civic, religious or fraternal and is recognized as tax exempt.

No information reported.

©2016 FINRA. All rights reserved. Report about CRAIG M. GOULD.

NLINDSAY - 27/01/2017 08:58:56

User Guidance

FINra

www.finra.org/brokercheck

**Registration and Employment History**

NLINDSAY - 27/01/2017 08:58:56

©2016 FINRA. All rights reserved. Report about CRAIG M. GOULD.

www.finra.org/brokercheck

User Guidance



finra

## Disclosure Events

**What you should know about reported disclosure events:**

1. All individuals registered to sell securities or provide investment advice are required to disclose customer complaints and arbitrations, regulatory actions, employment terminations, bankruptcy filings, and criminal or civil judicial proceedings.

2. **Certain thresholds must be met before an event is reported to CRD, for example:**
   o A law enforcement agency must file formal charges before a broker is required to disclose a particular criminal event.
   o A customer dispute must involve allegations that a broker engaged in activity that violates certain rules or conduct governing the industry and that the activity resulted in damages of at least $5,000.
   o

3. **Disclosure events in BrokerCheck reports come from different sources:**
   o As mentioned at the beginning of this report, information contained in BrokerCheck comes from brokers, brokerage firms and regulators. When more than one of these sources reports information for the same disclosure event, all versions of the event will appear in the BrokerCheck report. The different versions will be separated by a solid line with the reporting source labeled.
   o

4. **There are different statuses and dispositions for disclosure events:**
   o A disclosure event may have a status of *pending, on appeal, or final.*
     ▪ A "pending" event involves allegations that have not been proven or formally adjudicated.
     ▪ An event that is "on appeal" involves allegations that have been adjudicated but are currently being appealed.
     ▪ A "final" event has been concluded and its resolution is not subject to change.
   o A final event generally has a disposition of *adjudicated, settled or otherwise resolved.*
     ▪ An "adjudicated" matter includes a disposition by (1) a court of law in a criminal or civil matter, or (2) an administrative panel in an action brought by a regulator that is contested by the party charged with some alleged wrongdoing.
     ▪ A "settled" matter generally involves an agreement by the parties to resolve the matter. Please note that brokers and brokerage firms may choose to settle customer disputes or regulatory matters for business or other reasons.
     ▪ A "resolved" matter usually involves no payment to the customer and no finding of wrongdoing on the part of the individual broker. Such matters generally involve customer disputes.

For your convenience, below is a matrix of the number and status of disclosure events involving this broker. Further information regarding these events can be found in the subsequent pages of this report. You also may wish to contact the broker to obtain further information regarding these events.

| | Pending | Final | On Appeal |
|---|---|---|---|
| Regulatory Event | 0 | 1 | 0 |

©2016 FINRA. All rights reserved. Report about CRAIG M. GOULD.

User Guidance

FINRA

www.finra.org/brokercheck

| | | | |
|---|---|---|---|
| Customer Dispute | 0 | 1 | N/A |
| Financial | 0 | 1 | N/A |

NLINDSAY - 27/01/2017 08:58:56

©2016 FINRA. All rights reserved. Report about CRAIG M. GOULD.

www.finra.org/brokercheck



User Guidance

FINRA

## Disclosure Event Details

When evaluating this information, please keep in mind that a disclosure event may be pending or involve allegations that are contested and have not been resolved or proven. The matter may, in the end, be withdrawn, dismissed, resolved in favor of the broker, or concluded through a negotiated settlement for certain business reasons (e.g., to maintain customer relationships or to limit the litigation costs associated with disputing the allegations) with no admission or finding of wrongdoing.

This report provides the information exactly as it was reported to CRD and therefore some of the specific data fields contained in the report may be blank if the information was not provided to CRD.

## Regulatory - Final

This type of disclosure event may involves (1) a final, formal proceeding initiated by a regulatory authority (e.g., a state securities agency, self-regulatory organization, federal regulatory organization, federal regulatory such as the Securities and Exchange Commission, foreign financial regulatory body) for a violation of investment-related rules or regulations; or (2) a revocation or suspension of a broker's authority to act as an attorney, accountant, or federal contractor.

### Disclosure 1 of 1

| | |
|---|---|
| **Reporting Source:** | Regulator |
| **Regulatory Action Initiated By:** | FINRA |
| **Sanction(s) Sought:** | Other: n/a |
| **Date Initiated:** | 12/29/2015 |
| **Docket/Case Number:** | 201404153030 |
| **Employing firm when activity occurred which led to the regulatory action:** | Cabot Lodge Securities LLC |
| **Product Type:** | No Product |
| **Allegations:** | Without admitting or denying the findings, Gould consented to the sanctions and to the entry of findings that he failed to timely report a judgment of approximately $25,577 on his Form U4. |
| **Current Status:** | Final |
| **Resolution:** | Acceptance, Waiver & Consent(AWC) |

©2016 FINRA. All rights reserved. Report about CRAIG M. GOULD.

NLINDSAY - 27/01/2017 08:58:56

www.finra.org/brokercheck

**Does the order constitute a final order based on violations of any laws or regulations that prohibit fraudulent, manipulative, or deceptive conduct?**

No

**Resolution Date:** 12/29/2015

**Sanctions Ordered:** Civil and Administrative Penalty(ies)/Fine(s)
Suspension

**If the regulator is the SEC, CFTC, or an SRO, did the action result in a finding of a willful violation or failure to supervise?**

No

**(1) willfully violated any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any of such Acts, or any of the rules of the Municipal Securities Rulemaking Board, or to have been unable to comply with any provision of such Act, rule or regulation?**

NLINDSAY - 27/01/2017 08:58:56
©2016 FINRA. All rights reserved. Report about CRAIG M. GOULD.
10

www.finra.org/brokercheck



User Guidance

(2) willfully aided, abetted, counseled, commanded, induced, or procured the violation by any person of any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any of such Acts, or any of the rules of the Municipal Securities Rulemaking Board? or

(3) failed reasonably to supervise another person subject to your supervision, with a view to preventing the violation by such person of any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any such Acts, or any of the rules of the Municipal Securities Rulemaking Board?

Sanction 1 of 1

Sanction Type:          Suspension

Capacities Affected:    any capacity

Duration:               10 business days

Start Date:             01/25/2016

End Date:               02/05/2016

©2016 FINRA. All rights reserved. Report about CRAIG M. GOULD.

NLINDSAY - 27/01/2017 08:58:56

www.finra.org/brokercheck

FINRA
User Guidance

**Monetary Sanction 1 of 1**

| | |
|---|---|
| **Monetary Related Sanction:** | Civil and Administrative Penalty(ies)/Fine(s) |
| **Total Amount:** | $5,000.00 |
| **Portion Levied against individual:** | $5,000.00 |
| **Payment Plan:** | |
| **Is Payment Plan Current:** | |
| **Date Paid by individual:** | 07/20/2016 |
| **Was any portion of penalty waived?** | No |
| **Amount Waived:** | |

........................................................................................

| | |
|---|---|
| **Reporting Source:** | Broker |
| **Regulatory Action Initiated By:** | FINRA |
| **Sanction(s) Sought:** | Suspension |
| **Date Initiated:** | 11/25/2015 |
| **Docket/Case Number:** | 2014041530301 |
| **Employing firm when activity occurred which led to the regulatory action:** | Cabot Lodge Securities LLC |
| **Product Type:** | No Product |
| **Allegations:** | Failure to keep Form U4 current by failing to report a judgement issued in favor of a bank which was subsequently paid in full. |
| **Current Status:** | Final |
| **Resolution:** | Acceptance, Waiver & Consent(AWC) |
| **Does the order constitute a final order based on violations of any laws or regulations that prohibit fraudulent, manipulative, or deceptive conduct?** | No |

©2016 FINRA. All rights reserved. Report about CRAIG M. GOULD.

12

www.finra.org/brokercheck

User Guidance

FINRA

**Resolution Date:** 12/29/2015

**Sanctions Ordered:** Suspension
Other: $2,500 fine

**Sanction 1 of 1**

**Sanction Type:** Suspension

**Capacities Affected:** All Capacities

**Duration:** 10 business days

**Start Date:** 01/25/2016

**End Date:** 02/05/2016

NLINDSAY - 27/01/2017 08:58:56

©2016 FINRA. All rights reserved. Report about CRAIG M. GOULD.

13

www.finra.org/brokercheck

User Guidance

finra

## Customer Dispute - Award / Judgment

This type of disclosure event involves a final, consumer-initiated, investment-related arbitration or civil suit containing allegations of sales practice violations against the broker that resulted in an arbitration award or civil judgment for the customer.

**Disclosure 1 of 1**

**Reporting Source:** Regulator

**Employing firm when activities occurred which led to the complaint:** WUNDERLICH SECURITIES

**Allegations:** SUITABILITY, UNAUTHORIZED TRADING, NEGLIGENCE

**Product Type:** Other

**Other Product Type(s):** COMMON STOCK

**Alleged Damages:** $15,000.00

**Arbitration Information**

**Arbitration/Reparation Claim filed with and Docket/Case No.:** FINRA - CASE #07-02723

**Date Notice/Process Served:** 09/19/2007

**Arbitration Pending?** No

**Disposition:** Award

**Disposition Date:** 03/25/2008

**Disposition Detail:** RESPONDENT IS JOINTLY AND SEVERALLY LIABLE AND SHALL PAY TO THE CLAIMANT $9,000 PLUS POST-AWARD INTEREST.

----------------------------------------------------------------

**Reporting Source:** Broker

**Employing firm when activities occurred which led to the complaint:** WUNDERLICH SECURITIES

**Allegations:** THE CLAIMANT TRANSFERRED IN FROM ANOTHER FIRM, AFTER HER REGISTERED REP CEASED EMPLOYMENT WITH THE FIRM, SHE ALLEGED THAT MR. GOULD AND WUNDERLICH SECURITIES PLACED AN UNAUTHORIZED TRANSACTION IN SELLING STOCKS HELD BY CLAIMANT AND THEN DIRECTED THE PROCEEDS TO A MONEY MARKET. THE SALE TOOK PLACE ONLY AFTER THE CLAIMANT COMPLAINED REGARDING THE

©2016 FINRA. All rights reserved. Report about CRAIG M. GOULD.

14

www.finra.org/brokercheck

User Guidance

FINRA

**Product Type:** RISKS OF THE STOCKS SHE HELD.

**Other Product Type(s):** Equity Listed (Common & Preferred Stock)

MUTUAL FUNDS

**Alleged Damages:** $13,589.00

## Customer Complaint Information

**Date Complaint Received:**

**Complaint Pending?** No

**Status:** Arbitration/Reparation

**Status Date:** 03/25/2008

**Settlement Amount:** $0.00

**Individual Contribution Amount:** $0.00

## Arbitration Information

**Arbitration/Reparation Claim filed with and Docket/Case No.:** FINRA 07-2723

**Date Notice/Process Served:** 10/29/2007

**Arbitration Pending?** No

**Disposition:** Award to Customer

**Disposition Date:** 03/25/2008

**Monetary Compensation Amount:** $9,000.00

**Individual Contribution Amount:** $0.00

**Broker Statement** THE FIRM AND MR. GOULD DENY THE ALLEGATIONS. AFTER COMPLAINING REGARDING THE VOLATILE NATURE OF THE STOCKS ACQUIRED BY HER PRIOR BROKER, SHE INSTRUCTED MR. GOULD TO SELL HER STOCKS TO PRESERVE HER CAPITAL THEREFORE THERE WERE NO UNAUTHORIZED TRADES. THE CLAIMANT ONLY COMPLAINED AFTER HER SON, WHO WAS A LONG TIME BUSINESS ASSOCIATE AND THE ASSISTANT TO HER ORIGINAL BROKER, HAD ALSO LEFT THE FIRM.

©2016 FINRA. All rights reserved. Report about CRAIG M. GOULD.

NLINDSAY - 27/01/2017 08:58:56

15

www.finra.org/brokercheck

## Financial - Final

This type of disclosure event involves a bankruptcy, compromise with one or more creditors, or Securities Investor Protection Corporation liquidation involving the broker or an organization/brokerage firm the broker controlled that occurred within the last 10 years.

**Disclosure 1 of 1**

**Reporting Source:** Broker

**Action Type:** Compromise

**Action Date:** 04/20/2010

**Organization Investment-Related?** No

**Type of Court:** State Court

**Name of Court:** COOK COUNTY CIRCUIT COURT

**Location of Court:** COOK COUNTY, ILLINOIS

**Docket/Case #:** M1-127316

**Action Pending?** No

**Disposition:** Satisfied/Released

**Disposition Date:** 07/09/2012

**If a compromise with creditor, provide:**

**Name of Creditor:** CITIBANK, NA

**Original Amount Owed:** $25,577.19

**Terms Reached with Creditor:** SETTLED IN FULL.

NLINDSAY - 27/01/2017 08:58:56

©2016 FINRA. All rights reserved. Report about CRAIG M. GOULD.

16

User Guidance

**FINRA**

**End of Report**

This page is intentionally left blank.

www.finra.org/brokercheck

©2016 FINRA. All rights reserved. Report about CRAIG M. GOULD.

NLINDSAY - 27/01/2017 08:58:56

17

# EXHIBIT "B"

NLINDSAY - 27/01/2017 08:58:56



**BrokerCheck Report**

## JEFFREY SCOTT SANDERS

CRD# 2200497

Report #1311-82424, data current as of Thursday, September 1, 2016.

| Section Title | Page(s) |
|---|---|
| Report Summary | 1 |
| Broker Qualifications | 2 - 3 |
| Registration and Employment History | 4 - 5 |
| Disclosure Events | 6 |

NLINDSAY - 27/01/2017 08:58:56



FINra

## About BrokerCheck®

BrokerCheck offers information on all current, and many former, registered securities brokers, and all current and former registered securities firms. FINRA strongly encourages investors to use BrokerCheck to check the background of securities brokers and brokerage firms before deciding to conduct, or continue to conduct, business with them.

- **What is included in a BrokerCheck report?**

  - BrokerCheck reports for individual brokers include information such as employment history, professional qualifications, disciplinary actions, criminal convictions, civil judgments and arbitration awards. BrokerCheck reports for brokerage firms include information on a firm's profile, history, and operations, as well as many of the same disclosure events mentioned above.

  - Please note that the information contained in a BrokerCheck report may include pending actions or allegations that may be contested, unresolved or unproven. In the end, these actions or allegations may be resolved in favor of the broker or brokerage firm, or concluded through a negotiated settlement with no admission or finding of wrongdoing.

- **Where did this information come from?**

  - The information contained in BrokerCheck comes from FINRA's Central Registration Depository, or CRD® and is a combination of:
    - information FINRA and/or the Securities and Exchange Commission (SEC) require brokers and brokerage firms to submit as part of the registration and licensing process, and
    - information that regulators report regarding disciplinary actions or allegations against firms or brokers.

- **How current is this information?**

  - Generally, active brokerage firms and brokers are required to update their professional and disciplinary information in CRD within 30 days. Under most circumstances, information reported by brokerage firms, brokers and regulators is available in BrokerCheck the next business day.

- **What if I want to check the background of an investment adviser firm or investment adviser representative?**

  - To check the background of an investment adviser firm or representative, you can search for the firm or individual in BrokerCheck. If your search is successful, click on the link provided to view the available licensing and registration information in the SEC's Investment Adviser Public Disclosure (IAPD) website at http://www.adviserinfo.sec.gov. In the alternative, you may search the IAPD website directly or contact your state securities regulator at http://www.finra.org/Investors/ToolsCalculators/BrokerCheck/P455414.

- **Are there other resources I can use to check the background of investment professionals?**

  - FINRA recommends that you learn as much as possible about an investment professional before deciding to work with them. Your state securities regulator can help you research brokers and investment adviser representatives doing business in your state.

Thank you for using FINRA BrokerCheck.


Using this site/information means that you accept the FINRA BrokerCheck Terms and Conditions. A complete list of Terms and Conditions can be found at brokercheck.finra.org


For additional information about the contents of this report, please refer to the User Guidance or www.finra.org/brokercheck. It provides a glossary of terms and a list of frequently asked questions, as well as additional resources. For more information about FINRA, visit www.finra.org.

NLINDSAY - 27/01/2017 08:58:56

www.finra.crulbrokercheck

User Guidance

finra

# JEFFREY S. SANDERS

CRD# 2200497

Currently employed by and registered with the following Firm(s):

**CABOT LODGE SECURITIES LLC**
555 SOUTH FEDERAL HIGHWAY
SUITE 430
BOCA RATON, FL 33432
CRD# 159712
Registered with this firm since: 03/11/2014

**CABOT LODGE SECURITIES LLC**
60 Broad Street
Suite 3402
NEW YORK, NY 10004
CRD# 159712
Registered with this firm since: 03/11/2014

# Report Summary for this Broker

This report summary provides an overview of the broker's professional background and conduct. Additional information can be found in the detailed report.

## Broker Qualifications

This broker is registered with:

- 1 Self-Regulatory Organization
- 3 U.S. states and territories

This broker has passed:

- 0 Principal/Supervisory Exams
- 3 General Industry/Product Exams
- 0 State Securities Law Exams

## Registration History

This broker was previously registered with the following securities firm(s):

**FINTEGRA, LLC**
CRD# 16741
BOCA RATON, FL
06/2009 - 02/2014

**JESUP & LAMONT SECURITIES CORP**
CRD# 39056
BOCA RATON, FL
11/2008 - 05/2009

**EMPIRE FINANCIAL GROUP, INC.**
CRD# 28759
BOCA RATON, FL
08/2002 - 11/2008

## Disclosure Events

All individuals registered to sell securities or provide investment advice are required to disclose customer complaints and arbitrations, regulatory actions, employment terminations, bankruptcy filings, and criminal or civil judicial proceedings.

Are there events disclosed about this broker? **Yes**

The following types of disclosures have been reported:

| Type | Count |
|---|---|
| Customer Dispute | 2 |

NLINDSAY - 27/01/2017 08:58:56

©2016 FINRA. All rights reserved. Report# 11311-82424 about JEFFREY S. SANDERS. Data current as of Thursday, September 1, 2016.

www.finra.org/brokercheck

User Guidance

**FINRA**

# Broker Qualifications

## Registrations

This section provides the self-regulatory organizations (SROs) and U.S. states/territories the broker is currently registered and licensed with, the category of each license, and the date on which it became effective. This section also provides, for every brokerage firm with which the broker is currently employed, the address of each branch where the broker works.

**This individual is currently registered with 1 SRO and is licensed in 3 U.S. states and territories through his or her employer.**

## Employment 1 of 1

| | |
|---|---|
| Firm Name: | CABOT LODGE SECURITIES LLC |
| Main Office Address: | 60 BROAD STREET |
| | SUITE 3402 |
| | NEW YORK, NY 10004 |
| Firm CRD#: | 159712 |

| SRO | Category | Status | Date |
|---|---|---|---|
| FINRA | General Securities Representative | APPROVED | 03/11/2014 |
| FINRA | Invest. Co and Variable Contracts | APPROVED | 03/11/2014 |

| U.S. State/ Territory | Category | Status | Date |
|---|---|---|---|
| Colorado | Agent | APPROVED | 04/03/2015 |
| Florida | Agent | APPROVED | 03/14/2014 |
| New Jersey | Agent | APPROVED | 03/11/2014 |

## Branch Office Locations

CABOT LODGE SECURITIES LLC
555 SOUTH FEDERAL HIGHWAY
SUITE 430
BOCA RATION, FL 33432

©2016 FINRA. All rights reserved.   Report# 1131-82424 about JEFFREY S. SANDERS. Data current as of Thursday, September 1, 2016.

NLINDSAY - 27/01/2017 08:58:56

www.finra.org/brokercheck

User Guidance



FINRA

# Broker Qualifications

## Industry Exams this Broker has Passed

This section includes all securities industry exams that the broker has passed. Under limited circumstances, a broker may attain a registration after receiving an exam waiver based on exams the broker has passed and/or qualifying work experience. Any exam waivers that the broker has received are not included below.

This individual has passed 0 principal/supervisory exams, 3 general industry/product exams, and 0 state securities law exams.

### Principal/Supervisory Exams

| Exam | Category | Date |
|------|----------|------|
| No information reported. | | |

### General Industry/Product Exams

| Exam | Category | Date |
|------|----------|------|
| National Commodity Futures Examination | Series 3 | 01/03/1992 |
| Investment Company Products/Variable Contracts Representative Examination | Series 6 | 05/03/1993 |
| General Securities Representative Examination | Series 7 | 11/08/1999 |

### State Securities Law Exams

| Exam | Category | Date |
|------|----------|------|
| No information reported. | | |

Additional information about the above exams or other exams FINRA administers to brokers and other securities professionals can be found at www.finra.org/brokerqualifications/registeredrep/.

©2016 FINRA. All rights reserved. Report# 11311-82424 about JEFFREY S. SANDERS. Data current as of Thursday, September 1, 2016.

NLINDSAY - 27/01/2017 08:58:56

www.finra.org/brokercheck

User Guidance

FINra

## Registration and Employment History

### Registration History

The broker previously was registered with the following firms:

| Registration Dates | Firm Name | CRD# | Branch Location |
|---|---|---|---|
| 06/2009 - 02/2014 | FINTEGRA, LLC | 18741 | BOCA RATON, FL |
| 11/2008 - 05/2009 | JESUP & LAMONT SECURITIES CORP | 39056 | BOCA RATON, FL |
| 06/2002 - 11/2008 | EMPIRE FINANCIAL GROUP, INC. | 28759 | BOCA RATON, FL |
| 10/2008 - 10/2008 | JESUP & LAMONT SECURITIES CORP | 39056 | NEW YORK, NY |
| 01/2001 - 06/2002 | RUSHMORE SECURITIES CORPORATION | 8392 | DALLAS, TX |
| 03/2000 - 02/2001 | NORTHSTAR SECURITIES, INC. | 11247 | DALLAS, TX |
| 07/1999 - 04/2000 | JWGENESIS FINANCIAL SERVICES, INC. | 11025 | ST. LOUIS, MO |
| 02/1996 - 07/1999 | SIGMA FINANCIAL CORPORATION | 14303 | ANN ARBOR, MI |
| 01/1996 - 01/1996 | IFG NETWORK SECURITIES, INC. | 19948 | ATLANTA, GA |
| 05/1983 - 01/1996 | WEALTH BUILDERS EQUITY CORPORATION | 22152 | |

### Employment History

This section provides up to 10 years of an individual broker's employment history as reported by the individual broker on the most recently filed Form U4.

Please note that the broker is required to provide this information only while registered with FINRA or a national securities exchange and the information is not updated via Form U4 after the broker ceases to be registered. Therefore, an employment end date of "Present" may not reflect the broker's current employment status.

| Employment Dates | Employer Name | Employer Location |
|---|---|---|
| 03/2014 - Present | CABOT LODGE SECURITIES LLC | NEW YORK, NY |
| 06/2009 - 03/2014 | FINTEGRA, LLC | BOCA RATON, FL |
| 08/2002 - 05/2009 | EMPIRE FINANCIAL GROUP, INC. | BOCA RATON, FL |

### Other Business Activities

This section includes information, if any, as provided by the broker regarding other business activities the broker is currently engaged in either as a proprietor, partner, officer, director, employee, trustee, agent or otherwise. This section does not include non-investment related activity that is exclusively charitable, civic, religious or fraternal and is recognized as tax exempt.

©2016 FINRA. All rights reserved.    Report#1131-82424 about JEFFREY S. SANDERS. Data current as of Thursday, September 1, 2016.



www.finra.org/brokercheck



User Guidance

## Registration and Employment History

### Other Business Activities, continued

1)THE FINANCIAL STORE, LLC; BOCA RATON, FL, INVESTMENT-RELATED; OWNER AND INSURANCE AGENT,STARTED MARCH, 2003, DEVOTE 25 HOURS PER MONTH DURING SECURITIES TRADING HOURS DETERMINING CUSTOMER NEED FOR FIXED AND HEALTH INSURANCE, SERVICING POLICIES AND MAKING SALES. 2)PRESTIGE PLANNING, INC. BOCA RATON, FL., INVESTMENT-RELATED; OWNER AND INSURANCE AGENT,STARTED MARCH, 2001, DEVOTE 5 HOURS PER MONTH DURING SECURITIES TRADING HOURS DETERMINING CUSTOMER NEEDS FOR FIXED ANNUITIES, AND FIXED AND HEALTH INSURANCE, SERVICING POLICIES AND MAKING SALES.
2) NORTHSTAR BROKERAGE (FMO) PHOENIX AZ-INVESTMENT-RELATED, AGENT, STARTED 1/2001 DEVOTE 10 HOURS PER MONTH DURING SECURITIES TRADING HOURS DETERMINING INSURANCE AGENTS AND CLIENT NEEDS FOR FIXED ANNUITIES, AND FIXED AND HEALTH INSURANCE, SERVICING POLICIES AND MAKING SALES.

NLINDSAY - 27/01/2017 08:58:56
©2018 FINRA. All rights reserved.    Report# 11311-32424 about JEFFREY S. SANDERS. Data current as of Thursday, September 1, 2018.

www.finra.org/brokercheck



User Guidance

# Disclosure Events

**What you should know about reported disclosure events:**

1. All individuals registered to sell securities or provide investment advice are required to disclose customer complaints and arbitrations, regulatory actions, employment terminations, bankruptcy filings, and criminal or civil judicial proceedings.

2. **Certain thresholds must be met before an event is reported to CRD, for example:**
   - o A law enforcement agency must file formal charges before a broker is required to disclose a particular criminal event.
   - o A customer dispute must involve allegations that a broker engaged in activity that violates certain rules or conduct governing the industry and that the activity resulted in damages of at least $5,000.

3. **Disclosure events in BrokerCheck reports come from different sources:**
   - o As mentioned at the beginning of this report, information contained in BrokerCheck comes from brokers, brokerage firms and regulators. When more than one of these sources reports information for the same disclosure event, all versions of the event will appear in the BrokerCheck report. The different versions will be separated by a solid line with the reporting source labeled.

4. **There are different statuses and dispositions for disclosure events:**
   - o A disclosure event may have a status of *pending, on appeal, or final.*
     - ▪ A "pending" event involves allegations that have not been proven or formally adjudicated.
     - ▪ An event that is "on appeal" involves allegations that have been adjudicated but are currently being appealed.
     - ▪ A "final" event has been concluded and its resolution is not subject to change.
   - o A final event generally has a disposition of *adjudicated, settled or otherwise resolved.*
     - ▪ An "adjudicated" matter includes a disposition by (1) a court of law in a criminal or civil matter, or (2) an administrative panel in an action brought by a regulator that is contested by the party charged with some alleged wrongdoing.
     - ▪ A "settled" matter generally involves an agreement by the parties to resolve the matter. Please note that brokers and brokerage firms may choose to settle customer disputes or regulatory matters for business or other reasons.
     - ▪ A "resolved" matter usually involves no payment to the customer and no finding of wrongdoing on the part of the individual broker. Such matters generally involve customer disputes.

For your convenience, below is a matrix of the number and status of disclosure events involving this broker. Further information regarding these events can be found in the subsequent pages of this report. You also may wish to contact the broker to obtain further information regarding these events.

| | Pending | Final | On Appeal |
|---|---|---|---|
| Customer Dispute | 0 | 2 | N/A |

©2016 FINRA. All rights reserved.   Report# 1131-32424 about JEFFREY S. SANDERS. Data current as of Thursday, September 1, 2016.

NLINDSAY - 27/01/2017 08:58:56

User Guidance

www.finra.org/brokercheck

NLINDSAY - 27/01/2017 08:58:56

©2016 FINRA. All rights reserved. Report# 11311-82424 about JEFFREY S. SANDERS. Data current as of Thursday, September 1, 2016

www.finra.org/brokercheck

User Guidance

Finra

## Disclosure Event Details

When evaluating this information, please keep in mind that a disclosure event may be pending or involve allegations that are contested and have not been resolved or proven. The matter may, in the end, be withdrawn, dismissed, resolved in favor of the broker, or concluded through a negotiated settlement for certain business reasons (e.g., to maintain customer relationships or to limit the litigation costs associated with disputing the allegations) with no admission or finding of wrongdoing.

This report provides the information exactly as it was reported to CRD and therefore some of the specific data fields contained in the report may be blank if the information was not provided to CRD.

### Customer Dispute - Settled

This type of disclosure event involves a consumer-initiated, investment-related complaint, arbitration proceeding or civil suit containing allegations of sale practice violations against the broker that resulted in a monetary settlement to the customer.

**Disclosure 1 of 1**

| | |
|---|---|
| **Reporting Source:** | Broker |
| **Employing firm when activities occurred which led to the complaint:** | FINTEGRA LLC |
| **Allegations:** | UNSUITABLE SALE OF NON-TRADED REIT, BREACH OF FIDUCIARY DUTY AND NEGLIGENT SUPERVISION SURFACED IN APRIL 2012 WHEN REIT PRICE DROPPED FROM $10 TO $5.16. |
| **Product Type:** | Other: PUBLIC NON-TRADED REIT |
| **Alleged Damages:** | $50,000.00 |
| **Is this an oral complaint?** | No |
| **Is this a written complaint?** | No |
| **Is this an arbitration/CFTC reparation or civil litigation?** | Yes |
| **Arbitration/Reparation forum or court name and location:** | FINRA |
| **Docket/Case #:** | 14-01206 |
| **Filing date of arbitration/CFTC reparation or civil litigation:** | 04/15/2014 |

©2016 FINRA. All rights reserved. Report# 11311-32424 about JEFFREY S. SANDERS. Data current as of Thursday, September 1, 2016.

NLINDSAY - 27/01/2017 08:58:56

www.finra.org/brokercheck



User Guidance

## Customer Complaint Information

**Date Complaint Received:** 06/18/2014

**Complaint Pending?** No

**Status:** Evolved into Arbitration/CFTC reparation (the individual is a named party)

**Status Date:** 06/18/2014

**Settlement Amount:** $0.00

**Individual Contribution Amount:** $0.00

## Arbitration Information

**Arbitration/CFTC reparation claim filed with (FINRA, AAA, CFTC, etc.):** FINRA

**Docket/Case #:** 14-01206

**Date Notice/Process Served:** 04/15/2014

**Arbitration Pending?** No

**Disposition:** Settled

**Disposition Date:** 08/21/2015

**Monetary Compensation Amount:** $7,000.00

**Individual Contribution Amount:** $7,000.00

NLINDSAY - 27/01/2017 08:58:56

©2016 FINRA. All rights reserved. Report# 1131-82424 about JEFFREY S. SANDERS. Data current as of Thursday, September 1, 2016.

www.finra.org/brokercheck



User Guidance

## Customer Dispute - Closed-No Action/Withdrawn/Dismissed/Denied

This type of disclosure event involves (1) a consumer-initiated, investment-related arbitration or civil suit containing allegations of sales practice violations against the individual broker that was dismissed, withdrawn, or denied; or (2) a consumer-initiated, investment-related written complaint containing allegations that the broker engaged in sales practice violations resulting in compensatory damages of at least $5,000, forgery, theft, or misappropriation, or conversion of funds or securities, which was closed without action, withdrawn, or denied.

**Disclosure 1 of 1**

| | |
|---|---|
| **Reporting Source:** | Broker |
| **Employing firm when activities occurred which led to the complaint:** | EMPIRE FINANCIAL GROUP INC. |
| **Allegations:** | TRADE ERROR LOSS OCCURRED WHEN ACCOUNT WAS FULLY LIQUIDATED IN MARCH 2009. |
| **Product Type:** | Debt-Corporate |
| **Alleged Damages:** | $103,083.42 |
| **Is this an oral complaint?** | No |
| **Is this a written complaint?** | Yes |
| **Is this an arbitration/CFTC reparation or civil litigation?** | No |

### Customer Complaint Information

| | |
|---|---|
| **Date Complaint Received:** | 01/11/2010 |
| **Complaint Pending?** | No |
| **Status:** | Denied |
| **Status Date:** | 11/14/2011 |
| **Settlement Amount:** | $0.00 |
| **Individual Contribution Amount:** | $0.00 |

©2016 FINRA. All rights reserved. Report# 11311-82424 about JEFFREY S. SANDERS. Data current as of Thursday, September 1, 2016.

User Guidance

FINRA

www.finra.org/brokercheck

**End of Report**

This page is intentionally left blank.

NLINDSAY - 27/01/2017 08:58:56

©2016 FINRA. All rights reserved.   Report# 11311-82424 about JEFFREY S. SANDERS. Data current as of Thursday, September 1, 2016.

# EXHIBIT "C"

NLINDSAY - 27/01/2017 08:58:56



FINRA

**BrokerCheck Report**

BRYAN FREDERICK WIEDERSUM

CRD# 2489614

| Section Title | Page(s) |
|---|---|
| Report Summary | 1 |
| Broker Qualifications | 2 - 3 |
| Registration and Employment History | 4 - 5 |
| Disclosure Events | 6 |

NLINDSAY - 27/01/2017 08:58:56



FINRA

## About BrokerCheck®

BrokerCheck offers information on all current, and many former, registered securities brokers, and all current and former registered securities firms. FINRA strongly encourages investors to use BrokerCheck to check the background of securities brokers and brokerage firms before deciding to conduct, or continue to conduct, business with them.

- **What is included in a BrokerCheck report?**

  - BrokerCheck reports for individual brokers include information such as employment history, professional qualifications, disciplinary actions, criminal convictions, civil judgments and arbitration awards. BrokerCheck reports for brokerage firms include information on a firm's profile, history, and operations, as well as many of the same disclosure events mentioned above.

  Please note that the information contained in a BrokerCheck report may include pending actions or allegations that may be contested, unresolved or unproven. In the end, these actions or allegations may be resolved in favor of the broker or brokerage firm, or concluded through a negotiated settlement with no admission or finding of wrongdoing.

- **Where did this information come from?**

  - The information contained in BrokerCheck comes from FINRA's Central Registration Depository, or CRD® and is a combination of:
    - o information FINRA and/or the Securities and Exchange Commission (SEC) require brokers and brokerage firms to submit as part of the registration and licensing process, and
    - o information that regulators report regarding disciplinary actions or allegations against firms or brokers.

- **How current is this information?**

  - Generally, active brokerage firms and brokers are required to update their professional and disciplinary information in CRD within 30 days. Under most circumstances, information reported by brokerage firms, brokers and regulators is available in BrokerCheck the next business day.

- **What if I want to check the background of an investment adviser firm or investment adviser representative?**

  To check the background of an investment adviser firm or representative, you can search for the firm or individual in BrokerCheck. If your search is successful, click on the link provided to view the available licensing and registration information in the SEC's Investment Adviser Public Disclosure (IAPD) website at http://www.adviserinfo.sec.gov. In the alternative, you may search the IAPD website directly or contact your state securities regulator at http://www.finra.org/Investors/ToolsCalculators/BrokerCheck/P455414.

- **Are there other resources I can use to check the background of investment professionals?**

  FINRA recommends that you learn as much as possible about an investment professional before deciding to work with them. Your state securities regulator can help you research brokers and investment adviser representatives doing business in your state.

Thank you for using FINRA BrokerCheck.



Using this site/information means that you accept the FINRA BrokerCheck Terms and Conditions. A complete list of Terms and Conditions can be found at brokercheck.finra.org



For additional information about the contents of this report, please refer to the User Guidance or www.finra.org/brokercheck. It provides a glossary of terms and a list of frequently asked questions, as well as additional resources. For more information about FINRA, visit www.finra.org.



NLINDSAY - 27/01/2017 08:58:56

www.finra.org/brokercheck

User Guidance

# BRYAN F. WIEDERSUM

CRD# 2489614

This broker is not currently registered.

## Report Summary for this Broker

This report summary provides an overview of the broker's professional background and conduct. Additional information can be found in the detailed report.

### Broker Qualifications

This broker is not currently registered.

This broker has passed:

- 1 Principal/Supervisory Exam
- 1 General Industry/Product Exam
- 2 State Securities Law Exams

### Registration History

This broker was previously registered with the following securities firm(s):

**FINTEGRA, LLC**
CRD# 16741
BOCA RATON, FL
06/2009 - 02/2014

**JESUP & LAMONT SECURITIES CORP**
CRD# 39056
BOCA RATON, FL
01/2009 - 05/2009

**EMPIRE FINANCIAL GROUP, INC.**
CRD# 28759
BOCA RATON, FL
08/2006 - 12/2008

### Disclosure Events

All individuals registered to sell securities or provide investment advice are required to disclose customer complaints and arbitrations, regulatory actions, employment terminations, bankruptcy filings, and criminal or civil judicial proceedings.

Are there events disclosed about this broker?  Yes

The following types of disclosures have been reported:

| Type | Count |
| --- | --- |
| Criminal | 2 |
| Customer Dispute | 1 |

### Investment Adviser Representative Information

The information below represents the individual's record as a broker. For details on this individual's record as an investment adviser representative, visit the SEC's Investment Adviser Public Disclosure website at
http://www.adviserinfo.sec.gov

©2016 FINRA. All rights reserved. Report about BRYAN F. WIEDERSUM.

www.finra.org/brokercheck

## Broker Qualifications

### Registrations

This section provides the self-regulatory organizations (SROs) and U.S. states/territories the broker is currently registered and licensed with, the category of each license, and the date on which it became effective. This section also provides, for every brokerage firm with which the broker is currently employed, the address of each branch where the broker works.

This broker is not currently registered.

NLINDSAY - 27/01/2017 08:58:56

©2016 FINRA. All rights reserved. Report about BRYAN F. WIEDERSUM.        2

www.finra.org/brokercheck

User Guidance



FINRA

# Broker Qualifications

## Industry Exams this Broker has Passed

This section includes all securities industry exams that the broker has passed. Under limited circumstances, a broker may attain a registration after receiving an exam waiver based on exams the broker has passed and/or qualifying work experience. Any exam waivers that the broker has received are not included below.

This individual has passed 1 principal/supervisory exam, 1 general industry/product exam, and 2 state securities law exams.

### Principal/Supervisory Exams

| Exam | Category | Date |
|---|---|---|
| General Securities Principal Examination | Series 24 | 10/10/2000 |

### General Industry/Product Exams

| Exam | Category | Date |
|---|---|---|
| General Securities Representative Examination | Series 7 | 08/31/1994 |

### State Securities Law Exams

| Exam | Category | Date |
|---|---|---|
| Uniform Securities Agent State Law Examination | Series 63 | 04/13/1995 |
| Uniform Combined State Law Examination | Series 66 | 12/27/2000 |

Additional information about the above exams or other exams FINRA administers to brokers and other securities professionals can be found at www.finra.org/brokerqualifications/registeredrep/.

NLINDSAY - 27/01/2017 08:58:56

©2016 FINRA. All rights reserved. Report about BRYAN F. WIEDERSUM.

www.finra.org/brokercheck

User Guidance

FInra▶

# Registration and Employment History

## Registration History

The broker previously was registered with the following firms:

| Registration Dates | Firm Name | CRD# | Branch Location |
|---|---|---|---|
| 06/2009 - 02/2014 | FINTEGRA, LLC | 16741 | BOCA RATON, FL |
| 01/2009 - 05/2009 | JESUP & LAMONT SECURITIES CORP | 39056 | BOCA RATON, FL |
| 08/2006 - 12/2008 | EMPIRE FINANCIAL GROUP, INC. | 28759 | BOCA RATON, FL |
| 10/2004 - 08/2006 | CAPITAL GROWTH FINANCIAL, LLC | 41040 | BOCA RATON, FL |
| 01/2001 - 10/2004 | AXA ADVISORS, LLC | 6627 | NEW YORK, NY |
| 02/1999 - 01/2001 | BERNARD, LEE & EDWARDS SECURITIES, INC | 24050 | LEESBURG, FL |
| 03/1997 - 06/1997 | GLOBAL FINANCIAL GROUP, INC. | 23968 | MINNEAPOLIS, MN |
| 10/1996 - 03/1997 | D.L. CROMWELL INVESTMENTS, INC. | 37730 | BOCA RATON, FL |
| 06/1995 - 09/1996 | SOVEREIGN EQUITY MANAGEMENT CORP. | 20016 | DEERFIELD BEACH, FL |
| 05/1995 - 06/1995 | GREENWAY CAPITAL CORP. | 25152 | NEW YORK CITY, NY |

## Employment History

This section provides up to 10 years of an individual broker's employment history as reported by the individual broker on the most recently filed Form U4.

**Please note that the broker is required to provide this information only while registered with FINRA or a national securities exchange and the information is not updated via Form U4 after the broker ceases to be registered. Therefore, an employment end date of "Present" may not reflect the broker's current employment status.**

| Employment Dates | Employer Name | Employer Location |
|---|---|---|
| 01/2009 - Present | JESUP & LAMONT | BOCA RATON, FL |
| 08/2006 - 12/2008 | EMPIRE FINANCIAL GROUP, INC. | BOCA RATON, FL |

## Other Business Activities

This section includes information, if any, as provided by the broker regarding other business activities the broker is currently engaged in either as a proprietor, partner, officer, director, employee, trustee, agent or otherwise. This section does not include non-investment related activity that is exclusively charitable, civic, religious or fraternal and is recognized as tax exempt.

©2016 FINRA. All rights reserved. Report about BRYAN F. WIEDERSUM.



www.finra.org/brokercheck

User Guidance

## Registration and Employment History

### Other Business Activities, continued

FIXED INSURANCE THRU THE FINANCIAL STORE, 25%/75% TIME BETWEEN FIXED INSURANCE AND BD
BUSINESS.
PRESTIGE PLANNING-BOCA RATON, FL-AGENT-INTRODUCE BORROWERS TO LENDERS IN THE COMMERCIAL
REAL ESTATE ENVIRONMENT-5%-10% OF TIME DEVOTED

©2016 FINRA. All rights reserved. Report about BRYAN F. WIEDERSUM.

www.finra.org/brokercheck

User Guidance

**FiNRa**

# Disclosure Events

**What you should know about reported disclosure events:**

1. All individuals registered to sell securities or provide investment advice are required to disclose customer complaints and arbitrations, regulatory actions, employment terminations, bankruptcy filings, and criminal or civil judicial proceedings.

2. **Certain thresholds must be met before an event is reported to CRD, for example:**
   o A law enforcement agency must file formal charges before a broker is required to disclose a particular criminal event.
   o A customer dispute must involve allegations that a broker engaged in activity that violates certain rules or conduct governing the industry and that the activity resulted in damages of at least $5,000.
   o

3. **Disclosure events in BrokerCheck reports come from different sources:**
   o As mentioned at the beginning of this report, information contained in BrokerCheck comes from brokers, brokerage firms and regulators. When more than one of these sources reports information for the same disclosure event, all versions of the event will appear in the BrokerCheck report. The different versions will be separated by a solid line with the reporting source labeled.
   o

4. **There are different statuses and dispositions for disclosure events:**
   o A disclosure event may have a status of *pending*, *on appeal*, or *final*.
     ▪ A "pending" event involves allegations that have not been proven or formally adjudicated.
     ▪ An event that is "on appeal" involves allegations that have been adjudicated but are currently being appealed.
     ▪ A "final" event has been concluded and its resolution is not subject to change.
   o A final event generally has a disposition of *adjudicated*, *settled* or *otherwise resolved*.
     ▪ An "adjudicated" matter includes a disposition by (1) a court of law in a criminal or civil matter, or (2) an administrative panel in an action brought by a regulator that is contested by the party charged with some alleged wrongdoing.
     ▪ A "settled" matter generally involves an agreement by the parties to resolve the matter. Please note that brokers and brokerage firms may choose to settle customer disputes or regulatory matters for business or other reasons.
     ▪ A "resolved" matter usually involves no payment to the customer and no finding of wrongdoing on the part of the individual broker. Such matters generally involve customer disputes.

**For your convenience, below is a matrix of the number and status of disclosure events involving this broker. Further information regarding these events can be found in the subsequent pages of this report. You also may wish to contact the broker to obtain further information regarding these events.**

|  | Pending | Final | On Appeal |
|---|---|---|---|
| Criminal | 0 | 2 | 0 |

©2016 FINRA. All rights reserved. Report about BRYAN F. WIEDERSUM.




NLINDSAY - 27/01/2017 08:58:56

www.finra.org/brokercheck

User Guidance

Finra

Customer Dispute

0   1   N/A

NLINDSAY - 27/01/2017 08:58:56

©2016 FINRA. All rights reserved. Report about BRYAN F. WIEDERSUM.



User Guidance

finra

www.finra.org/brokercheck

## Disclosure Event Details

When evaluating this information, please keep in mind that a disclosure event may be pending or involve allegations that are contested and have not been resolved or proven. The matter may, in the end, be withdrawn, dismissed, resolved in favor of the broker, or concluded through a negotiated settlement for certain business reasons (e.g., to maintain customer relationships or to limit the litigation costs associated with disputing the allegations) with no admission or finding of wrongdoing.

This report provides the information exactly as it was reported to CRD and therefore some of the specific data fields contained in the report may be blank if the information was not provided to CRD.

## Criminal - Final Disposition

This type of disclosure event involves a criminal charge against the broker that has resulted in a conviction, acquittal, dismissal, or plea. The criminal matter may pertain to any felony or certain misdemeanor offenses, including bribery, perjury, forgery, counterfeiting, extortion, fraud, and wrongful taking of property.

### Disclosure 1 of 2

| | |
|---|---|
| Reporting Source: | Broker |
| Organization Name (if charge(s) were brought against an organization over which broker exercised control): | N/A |
| Court Details: | BOCA RATON POLICE DEPT; CIRCUIT COURT, PALM BEACH COUNTY, FL, CASE # 05-004120CFA02 |
| Charge Date: | 03/28/2005 |
| Charge Details: | COUNT 1: COCAINE POSSESSION, FELONY, ACQUITTED, NO; COUNT 2: NARCOTIC EQUIPMENT POSSESSION, MISDEMEANOR, ACQUITTED, NO. |
| Felony? | Yes |
| Current Status: | Final |
| Status Date: | 04/24/2006 |
| Disposition Details: | CHARGE 1: ACQUITTED, 4/24/06; COUNT 2: ACQUITTED, 4/24/06 |
| Broker Statement | ALL CHARGES WERE CLASSIFIED "NOLLE PROSSE" ON 4/24/06. |

### Disclosure 2 of 2

| | |
|---|---|
| Reporting Source: | Broker |

©2016 FINRA. All rights reserved. Report about BRYAN F. WIEDERSUM.

NLINDSAY - 27/01/2017 08:58:56

www.finra.org/brokercheck

User Guidance

finra

**Court Details:** TEMPE CITY PROSECUTOR'S OFFICE- CRIMINAL COMPLAINT
NO. 89-398984, 65, 66

**Charge Date:** 11/19/1989

**Charge Details:** DISORDERLY CONDUCT: 1 COUNT: MISDEMEANOR
ASSAULT: 1 COUNT: MISDEMEANOR
KNOWINGLYH PROVINDING FALSE INFORMATION TO A POLICY OFFICER: 1
COUNT: MISDEMEANOR

**Felony?** No

**Current Status:** Final

**Status Date:** 04/26/1990

**Disposition Details:** ALL CHARGES HAVE BEEN DISMISSED IN THEIR ENTIRETY. THIS MATTER
WAS DISMISSED WITHOUT EVEN THE NECESSARY OF A HEARING ON THE
ISSUE OF PROVIDING FALSE INFORMATION TO A POLICE OFFICER. I HAVE
BEEN TOTALLY EXONERATED ON ALL CHARGES BROUGHT AGAINST ME.

**Broker Statement** AT THE AGE OF 18, I WAS CHARGED WITH DISORDERLY
CONDUCT, ASSAULT, AND KNOWINGLY PROVIDING FALSE INFORMATION
TO
A POLICE OFFICER. THE POLICE OFFICER THAT BROUGHT SAID CHARGES
DID NOT UNDERSTAND THE EVENTS AS THEY OCCURRED. I MUST
EMPHASIZE THAT ALL CHARGES WERE DISMISSED IN THEIR ENTIRETY
WHEN THEY CAME BEFORE THE APPROPRIATE MAGISTRATE.

©2016 FINRA. All rights reserved. Report about BRYAN F. WIEDERSUM.

www.finra.org/brokercheck



User Guidance

finra

## Customer Dispute - Closed-No Action / Withdrawn / Dismissed / Denied

This type of disclosure event involves (1) a consumer-initiated, investment-related arbitration or civil suit containing allegations of sales practice violations against the individual broker that was dismissed, withdrawn, or denied; or (2) a consumer-initiated, investment-related written complaint containing allegations that the broker engaged in sales practice violations resulting in compensatory damages of at least $5,000, forgery, theft, or misappropriation, or conversion of funds or securities, which was closed without action, withdrawn, or denied.

**Disclosure 1 of 1**

**Reporting Source:** Firm

**Employing firm when** AXA ADVISORS
**activities occurred which led**
**to the complaint:**

**Allegations:** IN 2003, CLIENT ALLEGES THE FACE AMOUNT ON HER POLICY WAS
CHANGED FROM $250,000 TO $500,000 WITHOUT HER AUTHORIZATION.
CLIENT ALLEGES THAT SHE SIGNED DOCUMENTATION TO REALLOCATE
FUNDS TO LESS AGRESSIVE SUBACCOUNTS BUT DID NOT AUTHORIZE
THE FACE AMOUNT INCREASE. CLIENT IS REQUESTING TO HAVE ALL PAID
PREMIUMS RETURNED AT 5% INTEREST FROM SEPTEMBER 7, 2000 TO
PRESENT.

**Product Type:** Insurance

**Alleged Damages:** $0.00

### Customer Complaint Information

**Date Complaint Received:** 08/19/2005

**Complaint Pending?** No

**Status:** Denied

**Status Date:** 09/14/2005

**Settlement Amount:**

**Individual Contribution**
**Amount:**

**Firm Statement** THE FIRM FOUND NO BASIS TO THE CUSTOMER COMPLAINT.

-----------------------------------------------------------------------------

**Reporting Source:** Broker

**Employing firm when** AXA ADVISORS
**activities occurred which led**
**to the complaint:**

©2016 FINRA. All rights reserved. Report about BRYAN F. WIEDERSUM.

NLINDSAY - 27/01/2017 08:58:56
10⁻¹

www.finra.org/brokercheck

User Guidance

**Allegations:**

IN 2003, CLIENT ALLEGES THE FACE AMOUNT ON HER POLICY WAS CHANGED FROM $250,000 TO $500,000 WITHOUT HER AUTHORIZATION. CLIENT ALLEGES THAT SHE SIGNED DOCUMENTATION TO REALLOCATE FUNDS TO LESS AGGRESSIVE SUBACCOUNTS BUT DID NOT AUTHORIZE THE FACE AMOUNT INCREASE. CLIENT IS REQUESTING TO HAVE ALL PAID PREMIUMS RETURNED AT 5% INTEREST FROM SEPTEMBER 7, 2000 TO PRESENT.

**Product Type:** Insurance

**Alleged Damages:** $0.00

**Customer Complaint Information**

**Date Complaint Received:** 08/19/2005

**Complaint Pending?** No

**Status:** Denied

**Status Date:** 09/14/2005

**Settlement Amount:**

**Individual Contribution Amount:**

**Broker Statement** AXA ADVISORS FOUND NO BASIS TO THE CUSTOMER COMPLAINT. CLIENT ORIGINALLY APPROVED INCREASE OF FACE VALUE TO $500,000, BUT THEN CHANGED HER MIND. TRANSACTION WAS REVERSED PER CLIENT'S REQUEST, AND WAS SIGNED OFF BY BRANCH MANAGER

©2016 FINRA. All rights reserved. Report about BRYAN F. WIEDERSUM.

NLINDSAY - 27/01/2017 08:58:56

User Guidance

FINVA

www.finra.org/brokercheck

**End of Report**

This page is intentionally left blank.

NLINDSAY - 27/01/2017 08:58:56

©2016 FINRA. All rights reserved. Report about BRYAN F. WIEDERSUM.

# EXHIBIT "D"

NLINDSAY - 27/01/2017 08:58:56



**BrokerCheck Report**

## CABOT LODGE SECURITIES LLC

CRD# 159712

| Section Title | Page(s) |
| --- | --- |
| Report Summary | 1 |
| Firm Profile | 2 - 5 |
| Firm History | 6 |
| Firm Operations | 7 - 15 |
| Disclosure Events | 16 |

NLINDSAY - 27/01/2017 08:58:56



finra

## About BrokerCheck®

BrokerCheck offers information on all current, and many former, registered securities brokers, and all current and former registered securities firms. FINRA strongly encourages investors to use BrokerCheck to check the background of securities brokers and brokerage firms before deciding to conduct, or continue to conduct, business with them.

- **What is included in a BrokerCheck report?**

  BrokerCheck reports for individual brokers include information such as employment history, professional qualifications, disciplinary actions, criminal convictions, civil judgments and arbitration awards. BrokerCheck reports for brokerage firms include information on a firm's profile, history, and operations, as well as many of the same disclosure events mentioned above.

  Please note that the information contained in a BrokerCheck report may include pending actions or allegations that may be contested, unresolved or unproven. In the end, these actions or allegations may be resolved in favor of the broker or brokerage firm, or concluded through a negotiated settlement with no admission or finding of wrongdoing.

- **Where did this information come from?**

  The information contained in BrokerCheck comes from FINRA's Central Registration Depository, or CRD® and is a combination of:
  - o information FINRA and/or the Securities and Exchange Commission (SEC) require brokers and brokerage firms to submit as part of the registration and licensing process, and
  - o information that regulators report regarding disciplinary actions or allegations against firms or brokers.

- **How current is this information?**

  Generally, active brokerage firms and brokers are required to update their professional and disciplinary information in CRD within 30 days. Under most circumstances, information reported by brokerage firms, brokers and regulators is available in BrokerCheck the next business day.

- **What if I want to check the background of an investment adviser firm or investment adviser representative?**

  To check the background of an investment adviser firm or representative, you can search for the firm or individual in BrokerCheck. If your search is successful, click on the link provided to view the available licensing and registration information in the SEC's Investment Adviser Public Disclosure (IAPD) website at http://www.adviserinfo.sec.gov. In the alternative, you may search the IAPD website directly or contact your state securities regulator at http://www.finra.org/Investors/ToolsCalculators/BrokerCheck/P455414.

- **Are there other resources I can use to check the background of investment professionals?**

  FINRA recommends that you learn as much as possible about an investment professional before deciding to work with them. Your state securities regulator can help you research brokers and investment adviser representatives doing business in your state.

- Thank you for using FINRA BrokerCheck.




Using this site/information means that you accept the FINRA BrokerCheck Terms and Conditions. A complete list of Terms and Conditions can be found at
brokercheck.finra.org

For additional information about the contents of this report, please refer to the User Guidance or www.finra.org/brokercheck. It provides a glossary of terms and a list of frequently asked questions, as well as additional resources. For more information about FINRA, visit www.finra.org.

NLINDSAY - 27/01/2017 08:58:56

www.finra.org/brokercheck

User Guidance

finra

# CABOT LODGE SECURITIES LLC

CRD# 159712

SEC# 8-69009

## Main Office Location

60 BROAD STREET
SUITE 3402
NEW YORK, NY 10004
Regulated by FINRA New York Office

## Mailing Address

60 BROAD STREET
SUITE 3402
NEW YORK, NY 10004

## Business Telephone Number

212-388-6271

# Report Summary for this Firm

This report summary provides an overview of the brokerage firm. Additional information for this firm can be found in the detailed report.

## Firm Profile

This firm is classified as a limited liability company.

This firm was formed in Delaware on 10/21/2011.

Its fiscal year ends in December.

## Firm History

Information relating to the brokerage firm's history such as other business names and successions (e.g., mergers, acquisitions) can be found in the detailed report.

## Firm Operations

This firm is registered with:

*   the SEC
*   1 Self-Regulatory Organization
*   52 U.S. states and territories

Is this brokerage firm currently suspended with any regulator? **No**

This firm conducts 17 types of businesses.

This firm is affiliated with financial or investment institutions.

This firm has referral or financial arrangements with other brokers or dealers.

## Disclosure Events

Brokerage firms are required to disclose certain criminal matters, regulatory actions, civil judicial proceedings and financial matters in which the firm or one of its control affiliates has been involved.

Are there events disclosed about this firm?     **Yes**

The following types of disclosures have been reported:

| Type | Count |
|------|-------|
| Regulatory Event | 2 |

©2017 FINRA. All rights reserved.     Report about CABOT LODGE SECURITIES LLC

NLINDSAY - 27/01/2017 08:58:56



User Guidance

www.finra.org/brokercheck

# Firm Profile

This firm is classified as a limited liability company.

This firm was formed in Delaware on 10/21/2011.

Its fiscal year ends in December.

## Firm Names and Locations

This section provides the brokerage firm's full legal name, "Doing Business As" name, business and mailing addresses, telephone number, and any alternate name by which the firm conducts business and where such name is used.

**CABOT LODGE SECURITIES LLC**

**Doing business as CABOT LODGE SECURITIES LLC**

CRD#   159712

SEC#   8-69009

**Main Office Location**

60 BROAD STREET
SUITE 3402
NEW YORK, NY  10004

**Regulated by FINRA New York Office**

**Mailing Address**

60 BROAD STREET
SUITE 3402
NEW YORK, NY  10004

**Business Telephone Number**

212-388-6271

NLINDSAY - 27/01/2017 08:58:56

©2017 FINRA. All rights reserved.   Report about CABOT LODGE SECURITIES LLC            2

www.finra.org/brokercheck

## Firm Profile

This section provides information relating to all direct owners and executive officers of the brokerage firm.

## Direct Owners and Executive Officers

| | |
|---|---|
| **Legal Name & CRD# (if any):** | MHC SECURITIES, LLC |
| **Is this a domestic or foreign entity or an individual?** | Domestic Entity |
| **Position** | SOLE MEMBER |
| **Position Start Date** | 02/2016 |
| **Percentage of Ownership** | 75% or more |
| **Does this owner direct the management or policies of the firm?** | Yes |
| **Is this a public reporting company?** | No |

| | |
|---|---|
| **Legal Name & CRD# (if any):** | DAVIS, HOWARD |
| | 1782118 |
| **Is this a domestic or foreign entity or an individual?** | Individual |
| **Position** | CCO, INVESTMENT BANKING MANAGER |
| **Position Start Date** | 12/2014 |
| **Percentage of Ownership** | Less than 5% |
| **Does this owner direct the management or policies of the firm?** | Yes |
| **Is this a public reporting company?** | No |

| | |
|---|---|
| **Legal Name & CRD# (if any):** | GOULD, CRAIG MICHAEL |
| | 2367293 |
| **Is this a domestic or foreign entity or an individual?** | Individual |
| **Position** | PRESIDENT AND CEO |
| **Position Start Date** | 05/2012 |

©2017 FINRA. All rights reserved. Report about CABOT LODGE SECURITIES LLC

www.finra.org/brokercheck
## Firm Profile

User Guidance

FINCa

## Direct Owners and Executive Officers (continued)

| | |
|---|---|
| Percentage of Ownership | Less than 5% |
| Does this owner direct the management or policies of the firm? | Yes |
| Is this a public reporting company? | No |
| **Legal Name & CRD# (if any):** | KIRSCHENBLATT, CHAD ETHAN |
| | 2503352 |
| Is this a domestic or foreign entity or an individual? | Individual |
| Position | FINOP |
| Position Start Date | 02/2015 |
| Percentage of Ownership | Less than 5% |
| Does this owner direct the management or policies of the firm? | No |
| Is this a public reporting company? | No |
| **Legal Name & CRD# (if any):** | LANDI, RICHARD EDWARD |
| | 1336947 |
| Is this a domestic or foreign entity or an individual? | Individual |
| Position | MUNICIPAL PRINCIPAL, OPTIONS PRINCIPAL AND OSJ MANAGER |
| Position Start Date | 08/2013 |
| Percentage of Ownership | Less than 5% |
| Does this owner direct the management or policies of the firm? | No |
| Is this a public reporting company? | No |

©2017 FINRA. All rights reserved.   Report about CABOT LODGE SECURITIES LLC

NLINDSAY - 27/01/2017 08:58:56

www.finra.org/brokercheck

User Guidance

FINRA

# Firm Profile

This section provides information relating to any indirect owners of the brokerage firm.

## Indirect Owners

| | |
|---|---|
| Legal Name & CRD# (if any): | MARKOWITS, ALEXANDER C |
| | 6561516 |
| Is this a domestic or foreign entity or an individual? | Individual |
| Company through which indirect ownership is established | MHC SECURITIES, LLC |
| Relationship to Direct Owner | MANAGER |
| Relationship Established | 07/2015 |
| Percentage of Ownership | 75% or more |
| Does this owner direct the management or policies of the firm? | Yes |
| Is this a public reporting company? | No |

©2017 FINRA. All rights reserved. Report about CABOT LODGE SECURITIES LLC

NLINDSAY - 27/01/2017 08:58:56

5

www.finra.org/brokercheck



User Guidance

## Firm History

This section provides information relating to any successions (e.g., mergers, acquisitions) involving the firm.

No information reported.

NLINDSAY - 27/01/2017 08:58:56

©2017 FINRA. All rights reserved.   Report about CABOT LODGE SECURITIES LLC

www.finra.org/brokercheck

User Guidance

Finra

# Firm Operations

## Registrations

This section provides information about the regulators (Securities and Exchange Commission (SEC), self-regulatory organizations (SROs), and U.S. states and territories) with which the brokerage firm is currently registered and licensed, the date the license became effective, and certain information about the firm's SEC registration.

**This firm is currently registered with the SEC, 1 SRO and 52 U.S. states and territories.**

| Federal Regulator | Status | Date Effective |
|---|---|---|
| SEC | Approved | 08/09/2012 |

## SEC Registration Questions

This firm is registered with the SEC as:

A broker-dealer: Yes

A broker-dealer and government securities broker or dealer: Yes

A government securities broker or dealer only: No

This firm has ceased activity as a government securities broker or dealer: No

| Self-Regulatory Organization | Status | Date Effective |
|---|---|---|
| FINRA | Approved | 08/09/2012 |

©2017 FINRA. All rights reserved. Report about CABOT LODGE SECURITIES LLC

www.finra.org/brokercheck

finra

## Firm Operations

### Registrations (continued)

| U.S. States & Territories | Status | Date Effective | U.S. States & Territories | Status | Date Effective |
|---|---|---|---|---|---|
| Alabama | Approved | 09/20/2012 | North Carolina | Approved | 08/15/2012 |
| Alaska | Approved | 08/21/2012 | North Dakota | Approved | 09/05/2012 |
| Arizona | Approved | 09/07/2012 | Ohio | Approved | 09/06/2012 |
| Arkansas | Approved | 09/04/2012 | Oklahoma | Approved | 08/22/2012 |
| California | Approved | 08/22/2012 | Oregon | Approved | 08/28/2012 |
| Colorado | Approved | 09/24/2012 | Pennsylvania | Approved | 08/23/2012 |
| Connecticut | Approved | 08/29/2012 | Puerto Rico | Approved | 09/06/2012 |
| Delaware | Approved | 08/28/2012 | Rhode Island | Approved | 08/14/2012 |
| District of Columbia | Approved | 09/05/2012 | South Carolina | Approved | 08/29/2012 |
| Florida | Approved | 11/19/2012 | South Dakota | Approved | 08/17/2012 |
| Georgia | Approved | 08/24/2012 | Tennessee | Approved | 09/24/2012 |
| Hawaii | Approved | 09/07/2012 | Texas | Approved | 08/29/2012 |
| Idaho | Approved | 08/17/2012 | Utah | Approved | 08/16/2012 |
| Illinois | Approved | 08/31/2012 | Vermont | Approved | 08/29/2012 |
| Indiana | Approved | 08/31/2012 | Virginia | Approved | 08/20/2012 |
| Iowa | Approved | 08/20/2012 | Washington | Approved | 08/17/2012 |
| Kansas | Approved | 09/06/2012 | West Virginia | Approved | 09/07/2012 |
| Kentucky | Approved | 08/21/2012 | Wisconsin | Approved | 09/05/2012 |
| Louisiana | Approved | 08/20/2012 | Wyoming | Approved | 08/30/2012 |
| Maine | Approved | 10/11/2012 | | | |
| Maryland | Approved | 08/24/2012 | | | |
| Massachusetts | Approved | 08/22/2012 | | | |
| Michigan | Approved | 09/04/2012 | | | |
| Minnesota | Approved | 08/20/2012 | | | |
| Mississippi | Approved | 08/17/2012 | | | |
| Missouri | Approved | 08/21/2012 | | | |
| Montana | Approved | 08/20/2012 | | | |
| Nebraska | Approved | 09/05/2012 | | | |
| Nevada | Approved | 09/04/2012 | | | |
| New Hampshire | Approved | 08/30/2012 | | | |
| New Jersey | Approved | 08/24/2012 | | | |
| New Mexico | Approved | 09/05/2012 | | | |
| New York | Approved | 08/17/2012 | | | |

©2017 FINRA. All rights reserved.   Report about CABOT LODGE SECURITIES LLC

NLINDSAY - 27/01/2017 08:58:56

www.finra.org/brokercheck

User Guidance

finra

# Firm Operations

## Types of Business

This section provides the types of business, including non-securities business, the brokerage firm is engaged in or expects to be engaged in.

**This firm currently conducts 17 types of businesses.**

### Types of Business

Broker or dealer retailing corporate equity securities over-the-counter

Broker or dealer selling corporate debt securities

Underwriter or selling group participant (corporate securities other than mutual funds)

Mutual fund retailer

U.S. government securities broker

Municipal securities broker

Broker or dealer selling variable life insurance or annuities

Solicitor of time deposits in a financial institution

Real estate syndicator

Broker or dealer selling oil and gas interests

Put and call broker or dealer or option writer

Broker or dealer selling tax shelters or limited partnerships in primary distributions

Broker or dealer selling tax shelters or limited partnerships in the secondary market

Non-exchange member arranging for transactions in listed securities by exchange member

Private placements of securities

Broker or dealer selling interests in mortgages or other receivables

Other - APPLICANT WILL ACT AS AN UNDERWRITER AND DISTRIBUTOR OF NON-TRADED PUBLIC REAL ESTATE INVESTMENT TRUSTS ("REIT") ON A BEST EFFORTS BASIS.

THE FIRM WILL ALSO PROVIDE ADVISORY SERVICES ON MERGERS, ACQUISITIONS, DIVESTITURES, JOINT VENTURES, RESTRUCTURINGS, REORGANIZATIONS, CAPITAL RAISING ACTIVITIES (INCLUDING REGISTERED PUBLIC AND PRIVATE PLACEMENTS), DEFENSIVE STRATEGIES, AND SIMILAR TRANSACTIONS, ACTIVITIES AND STRATEGIES. THE FIRM WILL ALSO PROVIDE FAIRNESS OPINIONS AND VALUATIONS.

## Other Types of Business

This firm does not effect transactions in commodities, commodity futures, or commodity options.

This firm does engage in other non-securities business.

Non-Securities Business Description:  APPLICANT, THROUGH AN AFFILIATED GENERAL AGENT, WILL SOLICIT

©2017 FINRA. All rights reserved.   Report about CABOT LODGE SECURITIES LLC

User Guidance

SALES OF FIXED AND OTHER NON-VARIABLE INSURANCE PRODUCTS.

www.finra.org/brokercheck

NLINDSAY - 27/01/2017 08:58:56

©2017 FINRA. All rights reserved.   Report about CABOT LODGE SECURITIES LLC

EXHIBIT "E"

NLINDSAY - 27/01/2017 08:58:56

IN ARBITRATION BEFORE FINRA DISPUTE RESOLUTION

EDWARD J. BOHNE, III                                    FINRA CASE NO.
JOSEPH R. RICE
JOHN MULHALL
JOSEPH I. MICELLI
RICHARD C. WIEDERSUM
RONALD A. DAVID, INDIVIDUALLY,
ON BEHALF OF HIS IRA, AND AS
TRUSTEE OF THE ALBERT S. DAVID TRUST
RONALD A. AND DONA C. DAVID AS TENANTS BY THE ENTIRETIES
DAVID A. PERRY
ELLERY AND JOSEPH MAUCERI
ARLEN FISCHLOWITZ, INDIVIDUALLY, AND AS
MANAGING MEMBER OF THE FISCHLOWITZ FAMILY LIMITED PARTNERSHIP
BERNARD GOTTHEIM
DORETTA SEIDMAN
CAROL DU PUIS
THOMAS AND HELENA LEYENDECKER
JEROME AND BARBARA LEVINE
OSBORNE HOLDINGS, LLC
DAVID L. ARLEIN
JEFFREY SANDERS, INDIVIDUALLY AND ON BEHALF OF HIS IRA
BRYAN F. WIEDERSUM
TERRENCE P. O'CONNOR
KENNETH E. GAUL
JOSEPH A. ZWOLAK
JOSEPH AND CONDE LOEFFLER
ARDIVAST AND SHIRLEY AVAKIAN
THOMAS A. NEAL
THOMAS SUNKIN
LISA CRONIN
MICHAEL HANLEY
IRENE AND CHARLES KIRDAHY
RONALD RICKARD, INDIVIDUALLY AND ON BEHALF OF HIS IRA
SCOTT AND STEPHANIE SCHULMAN
THOMAS J. MONTOYA
DIANE AND LAWRENCE SANDERS
EDWARD COHEN
DON NIST
JAMES JOSEPH WICKER, II
FRANK AND WENDY AMBROSINO
DENNIS AND VIVIAN ROSINI
SIMONE S. MONROE
BONNIE BOTTO
MICHELLE RUFF
RONALD SCHWARTZ
STEVEN C. SILVER
TIM CLANCY
COULTER FAMILY FOUNDATION

NLINDSAY - 27/01/2017 08:58:56

PAMELA COUNTER
KIM COULTER
PEARL KATZ
HELEN R. AND JOHN E. McHULIFFE

        Claimants,

v.

JESUP & LAMONT SECURITIES CORP.
EMPIRE FINANCIAL GROUP, INC.
STEPHEN DEGROAT
WILLIAM F. MORENO
TIMOTHY F. CASSIDY

        Respondents.

_____/

## STATEMENT OF CLAIM

EDWARD J. BOHNE, III, JOSEPH R. RICE, JOSEPH I. MICELLI, RICHARD C. WIEDERSUM, RONALD A. DAVID, IRA, RONALD A. DAVID, AS TRUSTEE OF THE ALBERT S. DAVID TRUST, RONALD A. AND DONA C. DAVID, AS TENANTS BY THE ENTIRETIES, DAVID A. PERRY, ELLERY AND JOSEPH MAUCERI, ARLEN FISCHLOWITZ, INDIVIDUALLY AND AS MANAGING MEMBER OF THE FISCHLOWITZ FAMILY LIMITED PARTNERSHIP, BERNARD GOTTHEIM, DORETTA SEIDMAN, CAROL DU PUIS, THOMAS AND HELENA LEYENDECKER, JEROME AND BARBARA LEVINE, OSBORNE HOLDINGS, LLC, DAVID L. ARLEIN, JEFFREY SANDERS, INDIVIDUALLY AND ON BEHALF OF HIS IRA, BRYAN F. WIEDERSUM, TERRENCE P. O'CONNOR, KENNETH E. GAUL, JOSEPH A. ZWOLAK, JOSEPH AND CONDE LOEFFLER, ARDIVAST AND SHIRLEY AVAKIAN, THOMAS A. NEAL, THOMAS SUNKIN, LISA CRONIN, MICHAEL HANLEY, IRENE AND CHARLES KIRDAHY, RONALD RICKARD, INDIVIDUALLY AND ON BEHALF OF HIS IRA, SCOTT AND STEPHANIE SCHULMAN, THOMAS J. MONTOYA, DIANE AND LAWRENCE SANDERS, EDWARD COHEN, DON NIST, JAMES JOSEPH WICKER, II, FRANK AND WENDY AMBROSINO, DENNIS AND VIVIAN ROSINI, SIMONE S. MONROE, BONNIE BOTTO, MICHELLE RUFF, RONALD SCHWARTZ, STEVEN C. SILVER, TIM CLANCY, PAMELA COULTER FAMILY FOUNDATION, PAMELA COULTER, KIM COULTER, PEARL KATZ, AND HELEN R. AND JOHN E. McHULIFFE (collectively, the "Claimants"), by and through their attorneys, file this Statement of Claim in connection with claims against JESUP & LAMONT SECURITIES CORP., EMPIRE FINANCIAL GROUP, INC., STEPHEN DEGROAT, WILLIAM F. MORENO, and TIMOTHY F. CASSIDY (collectively, the "Respondents").

Pursuant to the Code of Arbitration Procedure of the Financial Industry Regulatory Authority, Claimants, by and through their attorneys, The White Law Group, submit this claim against Respondents, jointly and severally.

NLINDSAY - 27/01/2017 08:58:56

## JURISDICTION

Claimants demand arbitration of their dispute against Respondents before FINRA Dispute Resolution, Inc. ("FINRA") pursuant to FINRA Rule 12200. Respondents are required to submit to this arbitration proceeding before FINRA by reason of Respondents' contract for membership with FINRA, incorporating by reference the Code of Arbitration Procedure of FINRA, under which Claimants, as a customer, are a member of the class of intended third party beneficiaries.

## THE PARTIES

Edward J. Bohne, II is a resident of Fort Lauderdale, Florida.

Joseph R. Rice is a resident of Lake Worth, Florida.

John Mulhall is a resident of Sun City, Arizona.

Joseph I. Micelli is a resident of Smithtown, New York.

Richard C. Wiedersum is a resident of James, New York.

Ronald A. and Dona C. David are residents of Boca Raton, Florida.

David A. Perry is a resident of North Fort Myers, Florida.

Ellery and Joseph Mauceri are residents of Highland Beach, Florida.

Arlen Fischlowitz is a resident of Boca Raton, Florida.

Bernard Gottheim is a resident of Boca Raton, Florida.

Doretta Seidman is a resident of Boca Raton, Florida.

Carol Du Puis is a resident of Jackson, New Jersey.

Thomas and Helena Leyendecker is a resident of Hypoluxo, Florida.

Jerome and Barbara Levine are residents of Boynton Beach, Florida.

Osborne Holdings, LLC is a firm doing business in Boca Raton, Florida.

David L. Arlein is a resident of Fort Lauderdale, Florida.

Jeffrey Sanders is a resident of Boca Raton, Florida.

Bryan F. Wiedersum is a resident of Boca Raton, Florida.

Terrence P. O'Connor is a resident of Lighthouse Point, Florida.

Kenneth E. Gaul is a resident of Port Jeff STA, New York.

3

NLINDSAY - 27/01/2017 08:58:56

Joseph A. Zwolak is a resident of Port Jeff STA, New York.

Joseph and Conde Loeffler is a resident of Highland Beach, Florida.

Ardivast and Shirley Avakian are residents of Boca Raton, Florida.

Thomas A. Neal is a resident of Coral Gables, Florida.

Thomas Sunkin is a resident of Inlet, New York.

Lisa Cronin is a resident of Bayshore, New York.

Michael Hanley is a resident of Deer Park, New York.

Irene and Charles Kirdahy are residents of Hillsboro Beach, Florida.

Ronald Rickard is a resident of Fort Lauderdale, Florida.

Scott and Stephanie Schulman are residents of Boca Raton, Florida.

Thomas J. Montoya is a resident of Boca Raton, Florida.

Diane and Lawrence Sanders are residents of Manalapan, New Jersey.

Edward Cohen is a resident of Boynton Beach, Florida.

Don Nist is a resident of Canton, Ohio.

James Joseph Wicker, II is a resident of West Palm Beach, Florida.

Frank and Wendy Ambrosino are residents of Manalapan, New Jersey.

Dennis and Vivian Rosini are residents of Plano, Texas.

Simone S. Monroe is a resident of Dallas, Texas.

Bonnie Botto is a resident of Mt. Sinai, New York.

Michelle Ruff is a resident of Boca Raton, Florida.

Ronald Schwartz is a resident of Wellington, Florida.

Steven C. Silver is a resident of Boca Raton, Florida.

Tim Clancy is a resident of Highland Beach, Florida.

Pamela and Kim Coulter are residents of Anthem, Arizona.  Kim Coulter is the authorized agent of the Coulter Family Foundation.

4

NLINDSAY - 27/01/2017 08:58:56

Pearl Katz is a resident of Boynton Beach, Florida.

Helen E. and John E. McHuliffe are residents of Palm Beach Gardens, Florida.

Respondent Jesup & Lamont Securities Corp. (CRD #39056) is a financial services/brokerage firm doing business in Arizona, New York, Florida and New Jersey, and was a member of FINRA at the time of the events at issue in this arbitration.

Respondent Empire Financial Group, Inc. (CRD #28759) is a financial services/brokerage firm doing business in Arizona, New York, Florida and New Jersey, and was a member of FINRA at the time of the events at issue in this arbitration.

Respondent Stephen DeGroat (CRD# 1429070) was a principal and registered representative of Jesup & Lamont at the time of the events at issue. Currently, he is registered with Matrix Capital Group.

Respondent William F. Moreno (CRD #2801621) was a principal and registered representative of Jesup & Lamont / Empire Financial at the time of the events at issue. Currently, he is registered with Revere Securities Corp.

Respondent Timothy F. Cassidy (CRD #2961836) was a principal and registered representative of Jesup & Lamont at the time of the events at issue. Currently, he is registered with Aegis Capital Corp.

## THE FACTS

All of the Claimants, individually, were investors of Uriah Bement Coal, Inc. ("Uriah Bement") through a private placement equity offering highly recommended and sold by Respondents Jesup & Lamont, Empire Financial Group, Inc. and Jesup & Lamont's chairman of the board, Respondent Stephen DeGroat, who had represented that they had done extensive due diligence on this offering.[1]

In late 2006, Jesup & Lamont purchased Empire Financial, acquiring the financial advisors then registered with Empire Financial. Included among those Empire Financial advisors were the financial advisors of The Financial Store, a small investment firm located in Boca Raton, Florida. For the next year or so, as the integration of Empire Financial and Jesup & Lamont was effectuated, the advisors of The Financial Store worked with the principals of both firms and relied on the due diligence of both firms prior to recommending investments to its clients.[2]

In late 2007 or early 2008, Steven DeGroat met with the advisors of The Financial Store. In this meeting, DeGroat presented an opportunity for The Financial Store and its clients to invest in a private coal company, Uriah Bement.

DeGroat represented to the registered representatives of the Financial Store that the management and the financial condition of Uriah Bement were 'outstanding' and 'performing beyond

---

[1]     It is unknown at this time the extent in which Respondents William F. Moreno and Timothy F. Cassidy, were involved in this particular offering by Jesup & Lamont and Empire Financial (such will be the subject of discovery in this matter). However, as principals of these firms, both have director liability for the actions of their respective firms.

[2]     Brokerage firms have a fiduciary duty to its clients to perform reasonable due diligence on an investment prior to offering it for sale.

NLINDSAY - 27/01/2017 08:58:56

expectations'. DeGroat further represented that rigorous due diligence had been completed by both Empire Financial and Jesup & Lamont to insure the safety of the investment. He also represented that Uriah Bement was such a good opportunity that he had personally invested $500,000 of his own funds into this company.

Empire Financial Group and Jesup & Lamont offered The Financial Store (and any investors that The Financial Store was able to procure) the opportunity to take an equity position in Uriah Bement at $1.00 a share, *if*, in turn, it could help in the raise of to $10 million for the company. With this additional investment, Respondents represented that Uriah Bement would use the proceeds to open a second coal mine. With another operating coal mine, DeGroat specifically represented that Uriah Bement could double its revenues, giving its investors an exit strategy with exceptional returns. Alternatively, Respondents indicated that The Financial Store could offer investors a straight debt/note offering with Uriah Bement for 8% on a 12 month note.

The time parameter of this investment, as promised by DeGroat, was 8 to 12 months with a maximum duration of 18 months. DeGroat represented that the company intended to go public during this time and that the shares would start trading at between $4.00 and $10.00 per share. As further inducement to The Financial Store to solicit investments in Uriah Bement from its clients, DeGroat represented that an auditing firm was in the final stages of completing its audit of Uriah Bement that would enable the company to go public through an IPO.

Respondents pitched the investment opportunity as a short term lucrative investment opportunity for the investors who participated in this private placement. In reliance on DeGroat's representations of thorough due diligence of this offering by Empire Financial and Jesup & Lamont, The Financial Store recommended the Uriah Bement investment to its clients.

Unfortunately for The Financial Store and its clients, Respondents made various misrepresentations regarding the investment. Neither DeGroat nor the private placement offering memorandum for this investment disclosed the background of the Chief Executive Officer, John Grounds, except to note his prior significant experience in mining production and in the successful operational turnaround of under performing operating mining assets. What neither failed to disclose was Grounds' history of bankruptcies, business failures and liens filed against him.

DeGroat also failed to disclose his own principal role with the company and pecuniary interest in raising these funds on behalf of the company. It also appears that DeGroat misrepresented his $500,000 personal investment in the firm.

Despite the representations to the country, Uriah Bement has not publicly registered its shares; no claimant has yet seen audited financials from Uriah Bement; and over 3 years later none of the mines have become operational to the extent promised by Respondents. No investor has earned a dime on their investment nor have any of their investment monies been returned. Both DeGroat and Uriah Bement have failed to fulfill any of the promises that DeGroat and the private memorandum made to investors.

---

### THE DAMAGES

Respondents acted recklessly and fraudulently in connection with this investment. But for Respondents' actions, Claimants' money would be safe. As a result of Respondents' actions and/or omissions, Claimants have lost a significant amount of money.

NLINDSAY - 27/01/2017 08:58:56

The following is a breakdown of each Claimant's approximate damages:

| Investor | Amount Invested |
|---|---|
| Edward J. Bohne, II | $150,000 |
| Joseph R. Rice | $22,500 |
| John Mulhall | $25,000 |
| Joseph I. Micelli | $12,500 |
| Richard C. Widersum | $150,000 |
| Ronald A. David, IRA | $100,000 |
| Ronald A. David, As Trustee of the Albert S. David Trust | $18,750 |
| Ronald A. David and Dona C. David, as Tenants by the Entireties | $68,750 |
| David A. Perry | $50,000 |
| Ellery and Joseph Mauceri | $50,000 |
| Arlen Fischlowitz (Fishlowitz Family Limited Partnership) | $50,000 |
| Bernard Gottheim | $6,250 |
| Doretta Seidman | $6,250 |
| Carol Du Puis | $25,000 |
| Thomas and Helena Leyendecker | $25,000 |
| Jerome and Barbara Levine | $50,000 |
| Osbourne Holdings, LLC | $250,000 |
| David L. Arlein | $100,000 |
| Jeffrey Sanders, Individually and on behalf of his IRA | $75,000 |
| Bryan F. Wiedersum | $150,000 |
| Terrance P. O'Connor | $50,000 |
| Kenneth E. Gaul | $180,000 |
| Joseph A. Zwolak | $73,000 |
| Joseph and Conde Loeffler | $25,000 |
| Ardivast and Shirley Avakian | $20,000 |
| Thomas A. Neal | $125,000 |
| Thomas Sunkin | $25,000 |
| Lisa Cronin | $50,000 |
| Michael Hanley | $12,500 |

7

NLINDSAY - 27/01/2017 08:58:56

| | |
|---|---|
| Irene and Charles Kirdahy | $62,500 |
| Ronald and Judith Rickard | $125,000 |
| Scott and Stephanie Schulman | $12,500 |
| Thomas J. Montoya | $12,500 |
| Diane and Lawrence Sanders | $25,000 |
| Edward Cohen | $130,000 |
| Don Nist | $65,000 |
| J.T. Wicker | $108,000 |
| Frank and Wendi Ambrosino | $60,000 |
| Dennis and Vivian Rosini | $1,000,000 |
| Simone S. Monroe | $25,000 |
| Bonnie Botto | $20,000 |
| Michelle Ruff | $15,000 |
| Ronald Schwartz | $25,000 |
| Steven C. Silver | $27,000 |
| Tim Clancy | $10,000 |
| Coulter Family Foundation | $50,000 |
| Pamela Coulter | $23,799 |
| Kim Coulter | $25,000 |
| Pearl Katz | $25,000 |
| Helen and John McHuliffe | $25,000 |
| **Total:** | **$3,816,799** |

## ATTORNEY'S FEES

Claimants specifically request that this panel not make a ruling with regard to their entitlement to attorneys' fees. Should the arbitration panel find that the Respondent is liable under any statute or contract that provides for attorneys' fees, Claimants intend to make application to a proper judicial forum for a determination of an appropriate amount of fees to be awarded.

## VIOLATION OF COMMON LAW FRAUD

Respondents violated the Common Law of Fraud. Respondents' fraud was the direct and proximate cause of the damages to Claimants as set forth above. Respondents:

8

NLINDSAY - 27/01/2017 08:58:56

(a)    Intentionally misrepresented the offering when as a company insider, he knew the likelihood of the representations bearing out were low to nonexistent;

(b)    Intentionally mislead Claimants by making false, fraudulent and misleading representations to them that their investments would be lucrative, highly profitable with a short term investment period because the company was already highly successful and performing beyond expectations.

(c)    Fraudulently misrepresented the nature of the investments as being low risk, thoroughly researched and as being suitable for Claimants' investment portfolio; and

(d)    Misrepresented the true nature of the investments selected by Respondents for Claimants; and

## BREACH OF FIDUCIARY DUTY

As a Florida broker and registered rep, Respondents owed Claimants a fiduciary duty to act in their best interests in the conduct of Claimants' investments. Respondents breached its fiduciary duty to Claimants by intentionally or at least willfully and recklessly disregarding the interests of Claimants.

In the broker/customer relationship with Claimants, Respondents were entrusted with the responsibility of determining investments and strategies consistent with Claimants' financial condition and needs. Further, Respondents were under a fiduciary duty to:

(a)    Recommend investments to Claimants only after studying them sufficiently to become informed as to their nature, price, financial prognosis, and suitability for Claimants;

(b)    Fully disclose all material risks and conflicts of the investment recommended to the claimants, and

(c)    Not misrepresent or omit any material fact to any transaction.

The foregoing fiduciary duties owed by Respondents to Claimants were breached in connection with the unsuitable investments made for Claimants.

## NEGLIGENT FAILURE TO SUPERVISE

Respondents owed Claimants a duty to conduct due diligence on any investment they recommended to an investor and assure that the transactions recommended were consistent with the rules of the self-regulating organizations of which Respondents are members.

In the conduct of Claimants' investments, Respondents intentionally, recklessly and/or negligently permitted unsuitable investments to be made. Respondents were negligent in their supervision of Claimants' investments. Respondents negligently or intentionally failed to implement and maintain an effective program of supervision and control over Claimants' investments and intentionally or otherwise negligently permitted Claimants to make unsuitable investments. Certainly the nature of

NLINDSAY - 27/01/2017 08:58:56

the investments made for Claimants should have alerted Respondents to the improper conduct of its agents in the aforementioned recommendations made to Claimants.

## NEGLIGENCE

Respondents were under a duty to exercise diligence in implementing investment strategies to recommend only transactions that would clearly be in the best interest of Claimants.

A relationship was established between Respondents and Claimants in which the former owed a duty to assure that only those transactions that were clearly consistent with the financial condition and investment needs of Claimants would be executed by Respondents.

Respondents failed to meet the generally accepted standard of care in rendering financial and investment advice to Claimants and instead were at a minimum, negligent in directing the investment by Claimants in highly unsuitable, grossly speculative and/or fraudulent investments.

Further, Respondents failed to conduct or perform any meaningful due diligence with respect to the investments sold to Claimants prior to offering them for sale to Claimants and wholly failed to make any determination as to the suitability of the investments as appropriate investments for Claimants.

But for Respondents' negligence, Claimants' funds never would have been invested in the private placement of Uriah Bement.

## VIOLATION OF FLORIDA STATUTE SECTION 517.301

"1) It is unlawful and a violation of the provisions of Florida Statute 517 chapter for a person:

(a) In connection with the rendering of any investment advice or in connection with the offer, sale, or purchase of any investment or security, including any security exempted under the provisions of s. 517.051 and including any security sold in a transaction exempted under the provisions of s. 517.061, directly or indirectly:

1. To employ any device, scheme, or artifice to defraud;

2. To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

3. To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person."

Respondent violated Chapter 517 by, among other things:

1. Making unsuitable investment recommendations to the Claimants to invest in Uriah Bement private placement;
2. By misrepresenting that the Uriah Bement private placement had been thoroughly researched and were appropriate for the Claimants; and

10

NLINDSAY - 27/01/2017 08:58:56

3. By misleading the Claimants into believing that the Uriah Bement investment was suitable for them despite knowing the undisclosed truth about the investment, particularly its chief executive officer.

Additionally, the making of unsuitable recommendations constitutes an independent violation of Section 517.301(1), Fla. Stat. Walch v. Dean Witter Reynolds, Inc. 1985 WL 1786 (M.D. Fla. 1985); Newsom v. Dean Witter Reynolds, Inc., 558 So. 2d 1076 (Fla. 1st DCA 1990). The Newsom court held:

> The statutes very title, … , denominates all covered, prohibited acts as "fraudulent transactions." Contrary to Appellee's argument, an **unsuitable trading violation** of Section 517.301(1), Fla. Stat., is not merely technical. Just like churning, it is statutory fraud." [emphasis added].

Claimants justifiably relied on all statements and omissions made by Respondents to them. By virtue of the foregoing, Respondents have violated, participated in violations, conspired to violate, aided and abetted violations, substantially assisted, and/or are vicariously liable for violations of Section 517.301 Fla. Stat.

## GENERAL RELIEF

The claims and causes of action set forth and the relief requested herein are intended to encompass any and all claims Claimants have against Respondents, whether specifically stated or not and now known to Claimants or not. The relief specifically demanded is not intended to limit, in any way, the relief to which Claimants are entitled. During the course of this matter, Claimants may discover additional information relevant to their claims that would give rise to additional causes of action. As a result, Claimants hereby demand relief for damages caused by Respondents' acts, omissions, representations, misrepresentations, breaches and failures not specifically set forth herein but supported by evidence subsequently discovered and proven by Claimants during the course of this matter including, but not limited to, those matters proven during the final hearing.

## DEMAND FOR RELIEF

Respondents are liable to Claimants. Claimants demand judgment against Respondents as follows:

    a. For actual damages to Claimants in an amount according to proof for each claimant but in an amount equal to a total of $3,816,799.00 as a result of the unsuitable and fraudulent investment recommended by Respondents for Claimants;

    b. For punitive damages for Respondents wonton, willful and reckless handling of Claimants investments;

    c. For rescission of the investment in Uriah Bement so that each investor is placed in the position it would have been in had the fraudulent investment never been recommended for purchase;

    d. For interest and all of Claimants' costs, expenses and disbursements associated with their filing of this claim, including expert witness fees; and

11

NLINDSAY - 27/01/2017 08:58:56

e.  For such other relief as the Arbitration Panel deems just and proper.

## DEMAND FOR ARBITRATION

Claimants demand arbitration of their disputes with Respondents before an all public arbitration panel of three (3) persons in Boca Raton, FL and request five (5) days for the evidentiary hearing.

Date:   February _____, 2012                 Respectfully submitted,

**THE WHITE LAW GROUP, LLC**
2865 N. Clybourn Ave., Unit 1
Chicago, Illinois 60618
(312) 238-9650

By: _____
              D. Daxton White, Esq.
              Florida Bar No. 648655

12

NLINDSAY - 27/01/2017 08:58:56

EXHIBIT "F"

NLINDSAY - 27/01/2017 08:58:56

# CERTIFICATE OF LIABILITY INSURANCE

This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below. This insurance is issued pursuant to the state surplus lines law. Persons insured by surplus lines carriers do not have the protection of the state insurance guaranty act to the extent of any right of recovery for the obligation of an insolvent unlicensed insurer.

| Producer: | | |
|---|---|---|
| E&O Professional Risk Management and Insurance Services, LLC (E&O Pros) CA License # 0G38757 25461 Crown Valley Pkwy, Ste. 200 Mission Viejo, CA 92691 Phone: 949 528-6818 - Fax: 888 370-2842 | **Issue Date:** 11/7/2011 | |
| **Insured:** Registered Representatives/Agents of Fintegra, LLC Bryan Wadensum 555 S FEDERAL HWAY, SUITE 430 BOCA RATON, FL 33432 | **Insurer Affording Coverage:** Gotham Insurance Company | |

## COVERAGES

FLIC1112

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| Financial Services | Policy Number: | Policy Effective Date: | Policy Expiration Date: | Limits of Liability: |
|---|---|---|---|---|
| Professional Errors & Omissions Coverage (Claims Made & Reported) | PL10208111 | 11/2/2011 | 11/2/2012 | $1,000,000 Each Claim $3,000,000 Ex. Reg. Rep. Agg. |

**Description of Terms:**

Coverage is subject to all terms, conditions & exclusions of the policy & endorsements. If the Reg. Rep's/Agents contract terminates, coverage ceases that same date (per the terms of the policy). Includes coverage for the purchase, sale or servicing of financial instruments or securities including related planning or advice; and if approved & authorized in writing by said Broker/Dealer. Professional Services includes: 1. Services performed by a Broker-Dealer, RIA, Reg. Rep. or Agent on behalf of a Broker-Dealer: a. if performed in connection with the purchase or sale of financial instruments or securities, including related planning or advice; and b. if approved by said Outside Entity; and c. if performed in accordance with all licenses required by applicable law or regulation. 2. Services performed by an insured in connection with the purchase or sale of insurance products for a client. 3. Providing brokerage services for individual retirement accounts (IRAs), Keogh retirement plans, or employee benefit plans (other than multiple employer or multi-employee welfare arrangements. 4. "Investment advice" services provided as a "Fiduciary Advisor", if pursuant to an "eligible investment advice arrangement". 5. Providing general financial planning advice related to & in conjunction with the above professional services. Coverage is also provided for outside RIA activities if approved as an outside business activity by the Broker/Dealer, approved by the underwriter and named by endorsement to the policy. A $5,000 retention each claim/per Reg. Rep. /Agent applies for claims not involving the Broker/Dealer with claims involving the Broker/Dealer $50,000. Some specific products & activities may have different limit of liabilities or retentions relating to such. With respect to individual Registered Investment Advisors, Registered Representatives or Agents covered under this Policy, "Retroactive Date" shall mean the earliest of one of the following: a. the First Inception Date, provided coverage has been maintained in force without interruption through to the inception of this Policy; or b. the Retroactive Date noted in the Declarations of this Policy; or c. an inception date of an insurance policy providing liability insurance against professional errors and omissions coverage for that particular, individual Registered Investment Advisor, Registered Representative or Agent, provided such inception date is demonstrated through documentary evidence, both satisfactory to the Company and sufficient to clearly establish a specific Retroactive Date earlier than that stated in the Declarations of this Policy, and provided coverage has been maintained in force without interruption through to the inception of this Policy for that particular Registered Investment Advisor, Registered Representative or Agent. In the event the above section c. applies, this Policy will be construed as being excess over any available professional liability insurance coverage available to the Registered Investment Advisor, Registered Representative or Agent. (This is an incomplete summary of the policy terms. A copy of the policy is available upon request).

Individual Coverage Effective Date: 11/2/2011

## CERTIFICATE HOLDER

| | **CANCELLATION** |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL MAIL "0" DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES. Authorized Representative: Sheri Pontstillo |

EXHIBIT "G"

NLINDSAY - 27/01/2017 08:58:56

27-Dec-2016 20:14 FROM:954-943-8054 FAX p.7
954-943-8054 p.7
Dec 27 16 07:54p Kirdahy

 Todd A. Zuckerbrod, P.A.

March 10, 2014

Irene Kirdahy

Re:    Litigation against Fintegra, LLC and its Officers and Directors

Dear Irene:

This letter will confirm the scope of representation and fee arrangement under which you have engaged Todd A. Zuckerbrod, Esq. (the "Attorney") to represent you in the above referenced matter (the "Matter"). The scope of the Attorney's representation is limited to representing you in pursuit of the recovery of funds from Fintegra, LLC ("Fintegra") through litigation or settlement, which you invested with the ABD E&W Fund, LLP.

You agree to pay for your portion of the fees necessary to institute this legal proceeding which is $288.00 of the $1,800 filing fee as well as other fees and costs. It is herewith agreed that your portion of the Attorney's fee shall consist of a one-time retainer of $4,000.00, which represents your prorated share of an overall retainer of $25,000. The initial filing fee and one time retainer, which amounts to $4,288.00 is being paid on your behalf by Bryan Wiedersum. The Attorney shall, in addition, receive a contingency fee of Thirty-Three and One Third percent (33 1/3 %) of any recovery or settlement agreed to at any time during the preparation, pendency or completion of the Matter.

You authorize the Attorney to bring those actions and causes of action that you believe, in good faith, ought to be prosecuted in order to assert the claims against any offending parties including punitive damages, as may be applicable. You expressly acknowledge that the Attorney shall represent, in addition to you, other persons who invested in the same Hedge fund. You hereby expressly agree to a settlement (and thereby expressly waive any right to reject a settlement) for a sum equal to or greater than Fifty percent (50%) of the collective amount invested in ABD E& W Fund, LLP, by all clients of the Attorney.

The Attorney hereby discloses that he is the former General Counsel of Jesup and Lamont, Inc., Jesup and Lamont Securities Corp and Empire Financial Group, Inc. (collectively "Jesup"). The Attorney further discloses that he has in the past represented and presently represents Jeffrey Sanders, Bryan Wiedersum and other employees of the Financial Store. The Attorney does not believe that any of the foregoing creates, constitutes or gives rise to any conflict of interest in representing you to the fullest extent of the law. Notwithstanding, you hereby expressly agree to waive any conflict of interest in connection with the Attorney's representation of you based on the foregoing disclosures.

40 SE 5th Street, Suite 400, Boca Raton, FL 33457
Office (561)544-8144 – Mobile (561)801-3408 – Fax (561)544-4301
tz@tzbrokerlaw.com

NLINDSAY - 27/01/2017 08:58:56

You agree and understand that the Attorney's employment is upon a contingent fee basis and if no recovery is made, you will not be indebted to said Attorney for any Attorney's fees; however you will remain responsible for your prorated share of the aforementioned retainer.

It is the Attorney's policy, and the Attorney's right, to withdraw from the representation of any client in this matter, to the extent of and as permitted by the Florida Rules of Professional Responsibility and applicable rules of court, if any payment due becomes more than thirty days overdue.

You and the Attorney agree that any matter, dispute or controversy arising out of this agreement including, but not limited to, non-payment of fees, shall be resolved through binding arbitration pursuant to Rule 14-1.1 of the Rules Regulating the Florida Bar. Florida law shall govern in the arbitration. The prevailing party shall be entitled to its attorneys' fees and costs.

I believe that the above provisions outline in reasonable detail our agreement as to this representation. If you find these arrangements satisfactory, please sign this letter and return it to me. I very much appreciate the confidence in me that you have shown by engaging me to handle this matter, and I look forward to a positive and successful relationship. Of course, if at any time you have any questions regarding the progress of this case, please do not hesitate to call me.

If you prefer, you may remit the retainer by wire to:

Receiving Bank:     Legacy Bank of Florida
                    2300 Glades Road, Suite 140 West
                    Boca Raton, FL 33431

ABA:                ██████████████

Beneficiary:        Todd A. Zuckerbrod, P.A.

Beneficiary Acct#:  ██████████████

Sincerely,

Todd A. Zuckerbrod, Esq.

AGREED TO and ACCEPTED
this 12 day of March, 2014.

Irene Kirdahy

NLINDSAY - 27/01/2017 08:58:56

EXHIBIT "H"

NLINDSAY - 27/01/2017 08:58:56

**Award**
**FINRA Dispute Resolution**

In the Matter of the Arbitration Between:

Claimants                                      Case Number: 14-02059
Marc Azoff
Kathie Azoff
Edward Bohne
Edward Cohen
Ronald A. David and Dona C. David as Tenants by
the Entireties
Ronald David IRA
Lawrence Deziel
Kenneth Gaul
Irene Kirdahy
Conde Loeffler
Tony Lompado
Audri Lompado
David Perry IRA
Ronald G. Rickard, Individually and as Trustee for
the Ronald G. Rickard Roth IRA
Richard Wiedersum

     vs.

Respondents                                    Hearing Site: Boca Raton, Florida
Fintegra, LLC
John Eugene Egan
Kevin James Larson
Doreen Lea Weber

Nature of the Dispute:  Customers vs. Member and Associated Persons

This case was decided by an all-public panel.

### REPRESENTATION OF PARTIES

For Claimants Marc Azoff, Kathie Azoff, Edward Bohne, Edward Cohen, David Perry IRA, Lawrence Deziel, Kenneth Gaul, Irene Kirdahy, Conde Loeffler, Tony Lompado, Audri Lompado, Ronald A. David and Dona C. David as Tenants by the Entireties, Ronald David IRA, Ronald G. Rickard, Individually and as Trustee for the Ronald G. Rickard Roth IRA, and Richard Wiedersum: Todd A. Zuckerbrod, Esq., Todd A. Zuckerbrod, P.A., Boca Raton, Florida.

For Respondent Fintegra, LLC ("Fintegra"): Benjamin J. Biard, Esq., Winget, Spadafora & Schwartzberg, LLP, Miami, Florida.

NLINDSAY - 27/01/2017 08:58:56

FINRA Dispute Resolution
Arbitration No. 14-02059
Award Page 2 of 7

For Respondents Kevin James Larson ("Larson") and Doreen Lea Weber ("Weber"): F.
Chet Taylor, Esq., Taylor Law Office, PLC, Minneapolis, Minnesota.

For Respondent John Eugene Egan ("Egan"): F. Chet Taylor, Esq., Taylor Law Office,
PLC, Minneapolis, Minnesota until July 8, 2015. Thereafter, Respondent Egan
appeared pro se.

## CASE INFORMATION

Statement of Claim filed on or about: June 30, 2014.
David Perry IRA signed the Submission Agreement: June 18, 2014.
Kenneth Gaul signed the Submission Agreement: June 18, 2014.
Ronald G. Rickard, Individually and as Trustee for the Ronald G. Rickard Roth IRA
signed the Submission Agreement: June 18, 2014.
Lawrence Deziel signed the Submission Agreement: June 19, 2014.
Richard Wiedersum signed the Submission Agreement: June 19, 2014.
Conde Loeffler signed the Submission Agreement: June 20, 2014.
Edward Bohne signed the Submission Agreement: June 23, 2014.
Edward Cohen signed the Submission Agreement: June 23, 2014.
Ronald A. David and Dona C. David as Tenants by the Entireties signed the Submission
Agreement: June 23, 2014.
Ronald David IRA signed the Submission Agreement: June 23, 2014.
Kathie Azoff signed the Submission Agreement: June 25, 2014.
Marc Azoff signed the Submission Agreement: June 25, 2014.
Irene Kirdahy signed the Submission Agreement: June 27, 2014.
Audri Lompado signed the Submission Agreement: June 27, 2014.
Tony Lompado signed the Submission Agreement: June 27, 2014.

Statement of Answer filed by Respondents Fintegra, Larson, Weber and Egan
(hereinafter collectively referred to as "Respondents") on or about: August 26, 2014.
Fintegra, LLC signed the Submission Agreement: August 26, 2014.
John Eugene Egan signed the Submission Agreement: August 26, 2014.
Kevin James Larson signed the Submission Agreement: August 26, 2014.
Doreen Lea Weber signed the Submission Agreement: August 26, 2014.

Respondents' Joint Motion to Dismiss and Request for Expungement ("Motion to
Dismiss") filed on or about: March 13, 2015.
Claimants' Opposition to Motion to Dismiss filed on or about: April 27, 2015.
Respondents' Joint Reply in Support of the Motion to Dismiss filed on or about: May 4,
2015.

## CASE SUMMARY

Claimants asserted the following causes of action: breach of contract, breach of implied
contract, violation of Rule 10b-5 of the Securities Exchange Act of 1934, negligence,
negligent supervision, common law fraud, apparent authority/respondeat superior, sale
of unregistered securities, breach of the standards and customs of the securities
industry as evidenced by violation of FINRA rules and regulations, and unsuitable

NLINDSAY - 27/01/2017 08:58:56

FINRA Dispute Resolution
Arbitration No. 14-02059
Award Page 3 of 7

trading. The causes of action relate to Claimants' investments in the Analytical Based Decisions Energy and Weather Fund ("ABDE&W Fund").

Unless specifically admitted in their Answer, Respondents denied the allegations made in the Statement of Claim and asserted various affirmative defenses.

## RELIEF REQUESTED

In the Statement of Claim, Claimants requested compensatory damages in excess of $2,000,000.00 plus interest, punitive damages, costs, and such other and further relief as the Panel deemed just and proper.

At the close of the hearing, Claimants requested compensatory damages of $1,769,087.00 plus interest accruing at the rate of 4.75% per annum since October 2011, in the amount of $419,666.00.

In their Statement of Answer, Respondents requested dismissal of all claims in their entirety, costs, attorneys' fees and expungement of this matter from Respondents Weber, Larson and Egan's Central Registration Depository records.

## OTHER ISSUES CONSIDERED AND DECIDED

The Arbitrators acknowledge that they have each read the pleadings and other materials filed by the parties.

In their Motion to Dismiss, Respondents asserted, among other things, that Claimants purchased the security at issue before becoming clients of Fintegra and the person who sold the ABDE&W Fund to Claimants was never employed by Respondent Fintegra. In their Opposition to the Motion to Dismiss, Claimants asserted, among other things, that Respondents permitted an unregistered person to sell and/or maintain an investment-related product without the proper notice requirements of the State of Florida and FINRA. On or about May 11, 2015, following a recorded pre-hearing conference with the parties, the Panel issued an Order which denied the Motion to Dismiss.

On or about September 16, 2015, Respondent Fintegra filed for bankruptcy under the United States Bankruptcy Code. In accordance with these filings, all claims against Respondent Fintegra are indefinitely stayed. Therefore, the Panel made no determination with respect to the claims against Respondent Fintegra.

On or about October 1, 2015, Respondent Egan filed for bankruptcy under the United States Bankruptcy Code. In accordance with these filings, all claims against Respondent Egan are indefinitely stayed. Therefore, the Panel made no determination with respect to the claims against Respondent Egan.

On or about January 27, 2016, the United States Bankruptcy Court for the District of Minnesota issued an Order which stated that the automatic stay as to Respondent Fintegra does not extend to Respondents Weber and Larson.

NLINDSAY - 27/01/2017 08:58:56

FINRA Dispute Resolution
Arbitration No. 14-02059
Award Page 4 of 7

Claimants Kathie Azoff, David Perry and Irene Kirdahy appeared in-person during part of the evidentiary hearing. Claimant Audri Lompado testified at the hearing telephonically. The remaining Claimants did not appear in-person at the evidentiary hearing. All were represented by counsel who appeared at the evidentiary hearing.

During the evidentiary hearing, after the conclusion of Claimants' case-in-chief, Respondents Weber and Larson orally moved to dismiss this case on the basis that officers and directors of a company cannot be held personally liable for acts of nonfeasance. Claimants opposed the Motion. The Panel denied the Motion as moot after the conclusion of the evidentiary hearing.

During the evidentiary hearing, Respondents Weber and Larson withdrew their requests for expungement. Additionally, since Respondent Egan did not pursue his request for expungement, the Panel deemed it to be withdrawn.

The parties have agreed that the Award in this matter may be executed in counterpart copies or that a handwritten, signed Award may be entered.

## AWARD

After considering the pleadings, the testimony and evidence presented at the hearing, and the post-hearing submissions (if any), the Panel has decided in full and final resolution of the issues submitted for determination as follows:

1. Claimants' Statement of Claim is denied in its entirety.

2. Any and all claims for relief not specifically addressed herein, including Claimants' request for punitive damages and Respondents Weber and Larson's request for attorneys' fees, are denied.

## FEES

Pursuant to the Code of Arbitration Procedure, the following fees are assessed:

**Filing Fees**
FINRA Dispute Resolution assessed a filing fee* for each claim:
    Initial Claim Filing Fee            = $ 1,800.00

*The filing fee is made up of a non-refundable and a refundable portion.*

**Member Fees**
Member fees are assessed to each member firm that is a party in these proceedings or to the member firm(s) that employed the associated person(s) at the time of the event(s) giving rise to the dispute. Accordingly, as a party, Respondent Fintegra is assessed the following:

| | |
|---|---|
| Member Surcharge | = $ 2,800.00 |
| Pre-Hearing Processing Fee | = $   750.00 |
| Hearing Processing Fee | = $ 5,000.00 |

NLINDSAY - 27/01/2017 08:58:56

## Adjournment Fees
Adjournments granted during these proceedings for which fees were assessed:

July 27-31, 2015, adjournment by all Respondents          = $ 1,200.00

The Panel has assessed the entire adjournment fee of $1,200.00 jointly and severally to Respondents Weber and Larson.

January 19-22, 2016, adjournment by Respondents Weber and Larson     = $ 1,200.00

The Panel has assessed $600.00 of the adjournment fee jointly and severally to Claimants.

The Panel has assessed $600.00 of the adjournment fee jointly and severally to Respondents Weber and Larson.

## Discovery-Related Motion Fees
Fees apply for each decision rendered on a discovery-related motion.

One (1) Decision on a discovery-related motion on the papers
with one (1) arbitrator @ $200.00                            = $   200.00
Claimants submitted one (1) discovery-related motion

| | |
|---|---|
| Total Discovery-Related Motion Fees | = $   200.00 |

The Panel has assessed $100.00 of the discovery-related motion fee jointly and severally to Claimants.

The Panel has assessed $100.00 of the discovery-related motion fee jointly and severally to Respondents Weber and Larson.

## Contested Motion for Issuance of a Subpoena Fees
Fees apply for each decision on a contested motion for the issuance of a subpoena.

One (1) Decision on a contested motion for the issuance of a subpoena
with one (1) arbitrator @ $200.00 (maximum of $600)          = $   200.00

| | |
|---|---|
| Total Contested Motion for Issuance of Subpoenas Fees | = $   200.00 |

The Panel has assessed $100.00 of the contested motion for issuance of subpoenas fee jointly and severally to Claimants.

The Panel has assessed $100.00 of the contested motion for issuance of subpoenas fee jointly and severally to Respondents Weber and Larson.

## Hearing Session Fees and Assessments
The Panel has assessed hearing session fees for each session conducted. A session is any meeting between the parties and the arbitrator(s), including a pre-hearing

NLINDSAY - 27/01/2017 08:58:56

FINRA Dispute Resolution
Arbitration No. 14-02059
Award Page 6 of 7

conference with the arbitrator(s), that lasts four (4) hours or less. Fees associated with these proceedings are:

| | | | |
|---|---|---|---|
| One (1) Pre-hearing session with a single arbitrator @ $450.00/session | | | = $ 450.00 |
| Pre-hearing conference: | April 27, 2016 | 1 session | |
| | | | |
| Six (6) Pre-hearing sessions with the Panel @ $1,200.00/session | | | = $ 7,200.00 |
| Pre-hearing conferences: | December 18, 2014 | 1 session | |
| | May 11, 2015 | 1 session | |
| | June 16, 2015 | 1 session | |
| | July 16, 2015 | 1 session | |
| | August 14, 2015 | 1 session | |
| | January 8, 2016 | 1 session | |
| | | | |
| Eight (8) Hearing sessions @ $1,200.00/session | | | = $ 9,600.00 |
| Hearing Dates: | May 3, 2016 | 2 sessions | |
| | May 4, 2016 | 2 sessions | |
| | May 5, 2016 | 2 sessions | |
| | May 6, 2016 | 2 sessions | |

Total Hearing Session Fees                                                    =$17,250.00

The Panel has assessed $8,025.00 of the hearing session fees jointly and severally to Claimants.

The Panel has assessed $9,225.00 of the hearing session fees jointly and severally to Respondents Weber and Larson which includes the entire fee for the May 11, 2015, pre-hearing conference on Respondents' Motion to Dismiss.

All balances are payable to FINRA Dispute Resolution and are due upon receipt.

NLINDSAY - 27/01/2017 08:58:56

FINRA Dispute Resolution
Arbitration No. 14-02059
Award Page 7 of 7

## ARBITRATION PANEL

| | | |
|---|---|---|
| Randy R. Freedman | - | Public Arbitrator, Presiding Chairperson |
| Robert H. Loevin | - | Public Arbitrator |
| Donald Theodore Ryce, Jr. | - | Public Arbitrator |

I, the undersigned Arbitrator, do hereby affirm that I am the individual described herein and who executed this instrument which is my award.

## Concurring Arbitrators' Signatures

_____
Randy R. Freedman
Public Arbitrator, Presiding Chairperson

5/23/16
Signature Date

_____
Robert H. Loevin
Public Arbitrator

_____
Signature Date

_____
Donald Theodore Ryce, Jr.
Public Arbitrator

_____
Signature Date

May 23, 2016
_____
Date of Service (For FINRA's Office of Dispute Resolution use only)

NLINDSAY - 27/01/2017 08:58:56

FINRA Dispute Resolution
Arbitration No. 14-02059
Award Page 7 of 7

## **ARBITRATION PANEL**

| | | |
|---|---|---|
| Randy R. Freedman | – | Public Arbitrator, Presiding Chairperson |
| Robert H. Loevin | – | Public Arbitrator |
| Donald Theodore Ryce, Jr. | – | Public Arbitrator |

I, the undersigned Arbitrator, do hereby affirm that I am the individual described herein and who executed this instrument which is my award.

## **Concurring Arbitrators' Signatures**

_____
Randy R. Freedman
Public Arbitrator, Presiding Chairperson

Signature Date

$RcbevT \ H \ . \ Lcev'^n$

Robert H. Loevin
Public Arbitrator

$RefevT \ Green \ 5/21/16$
Signature Date

_____
Donald Theodore Ryce, Jr.
Public Arbitrator

Signature Date

May 23, 2016

_____
Date of Service (For FINRA's Office of Dispute Resolution use only)

NLINDSAY - 27/01/2017 08:58:56

FINRA Dispute Resolution
Arbitration No.  14-02059
Award Page 7 of 7

## ARBITRATION PANEL

| | | |
|---|---|---|
| Randy R. Freedman | - | Public Arbitrator, Presiding Chairperson |
| Robert H. Loevin | - | Public Arbitrator |
| Donald Theodore Ryce, Jr. | - | Public Arbitrator |

I, the undersigned Arbitrator, do hereby affirm that I am the individual described herein and who executed this instrument which is my award.

### Concurring Arbitrators' Signatures

_____          Signature Date

Randy R. Freedman
Public Arbitrator, Presiding Chairperson

_____          Signature Date

Robert H. Loevin
Public Arbitrator

Donald Theodore Ryce, Jr.                    Signature Date
Public Arbitrator

May 23, 2016
_____
Date of Service (For FINRA's Office of Dispute Resolution use only)

NLINDSAY - 27/01/2017 08:58:56

# EXHIBIT B

## 12200. Arbitration Under an Arbitration Agreement or the Rules of FINRA

Parties must arbitrate a dispute under the Code if:

- Arbitration under the Code is either:

    (1) Required by a written agreement, or

    (2) Requested by the customer;

- The dispute is between a customer and a member or associated person of a member; and

- The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

Amended by SR-FINRA-2008-021 eff. Dec. 15, 2008.
Adopted by SR-NASD-2003-158 eff. April 16, 2007.

**Selected Notices:** 07-07, 08-57.